NOTE.—A person who in no way aided or abetted a murder, but in whose hands a knife was placed by the murderer after the murder, is not an accomplice. People *v.* Ogle, 6 *N. Y. Crim. Rep.* 165.

# Court of Appeals.

*July*, 1887.

## PEOPLE *v.* KIBLER.

ADULTERATION OF MILK.—CONSTITUTIONALITY OF STATUTES.

Under the statute (L. 1885, ch. 183, §§ 1, 16, 17; amended, L. 1885, ch. 458), in regard to the adulteration of milk, knowledge or intention forms no element of the offense. The act alone, irrespective of its motive, constitutes the cause.

These statutes are constitutional.

If the milk sold was below the standard because it had been skimmed, and this fact was an exception to the statute, it was for the defendant to prove it as a defense.

APPEAL by Charles Kibler, defendant, from a judgment of the General Term of the Supreme Court in the Fifth Department, of February 19, 1887, affirming the judgment of the Court of Sessions of Erie County, entered upon a conviction of defendant of selling watered milk in violation of L. 1885, ch. 458.

*Chas. E. Stilwell*, for defendant, appellant.

*Geo. T. Quinby*, district-attorney, for the people, respondent.

I. The people were simply bound to prove that the milk was below the standard fixed by the statute. Under the provisions of section 16, it was to be declared adulterated, unless containing the percentages required thereby. No evidence was necessary on the part of the people as to the cause for its being below the standard. People *v.* Cipperly, 3 *N. Y. Crim. Rep.* 385; Commonwealth *v.* Keenan, 139 *Mass.* 195.

II. If milk below the standard was actually sold, the care or precaution taken by the appellant in his business, could be no defense under the statute.

Other decisions of this State fully sustain the proposition that unless a statute makes knowledge and intent elements of its violation, neither the want of knowledge nor the absence of intent can be shown as a defense. People *v.* Schaeffer, 41 *Hun.* 25; People *v.* Mahaney, *Id.* 28; People *v.* Noble, 1 *N. Y. Crim. Rep.* 459; People *v.* Storm, 8 *St. Rep.* 907; People *v.* Hill, 49 *Hun*, 432.

These decisions are in the same line as those of the courts of other States and of the United States. People *v.* Arensberg, 5 *N. Y. Crim. Rep.* 77; United States *v.* Bayard, 16 *Fed. Rep.* 384; Commonwealth *v.* Farren, 9 *Allen*,

489 ; Commonwealth v. Smith, 103 *Mass.* 444 ; Commonwealth v. Wentworth, 118 *Id.* 441 ; Commonwealth v. Evans, 132 *Id.* 11 ; Commonwealth v. Keenan, 139 *Id.* 195, Note to Farrell v. State, 30 *Am. Rep.* 617–620 ; Farrell v. State, 33 *Alb. L. J.* 79 ; 19 *Id.* 84 ; *Wharton Crim. L.* § 88. People v. Kerin, 4 *N. Y. Crim. Rep.* 140, does not conflict with these decisions. The court simply held that, by the express terms of section 8, knowledge and intent were made elements of the offense.

The General Term, by the recent decision in the People v. Hill, 49 *Hun,* 432, held that under the color clause, contained in the second paragraph of this section, knowledge and intent were not made essential to the violation of the section where coloring matter had been used contrary to its provisions, and sustained the same as constitutional.

The case of Commonwealth v. Temple, 14 *Gray,* 65–67, has long been overruled. This fact is recognized in Bishop on Statutory Crimes, § 358.

III. The authorities cited fully sustain the constitutionality of the section without knowledge and intent as elements of its violation. People v. Cipperly, and other cases already cited ; People v. Arensberg, 5 *N. Y. Crim. Rep.* 77 ; State v. Smyth, 14 *R. I.* 100 ; State v. Newton, 45 *N. J. L.* 469.

IV. It was unnecessary, as already shown, for the people to prove the cause of the milk being below the standard. The only exceptions provided by section 1 of the statute are skimmed milk, " sold to bakers or to housewives for their own use or manufacture, upon written orders for the same," and " sold for use in the county in which it is produced." There was no evidence in the case that the milk had been skimmed. Under the well settled principles applicable to the interpretation and enforcement of statutes of this character the appellant was obliged to prove his case within the exceptions to take advantage thereof. The proof of the milk being below the standard made a *prima facie*

case that it was not skimmed milk sold according to the exception contained in the section. Fleming *v.* People, 27 *N. Y.* 334 ; Schwab *v.* People, 4 *Hun,* 523, and cases cited ; Harris *v.* White, 81 *N. Y.* 532.

It is ridiculous to claim that the section does not apply to skimmed milk at all. Its object was to prevent the deception of purchasers and protect the consumer from injury. To have provided that deception and injury from the sale and consumption of unskimmed milk should be prevented, and greater evils resulting from the sale of skimmed milk as pure milk should not be restricted, would have been a very absurd exercise of legislative power, and which no court will hold to have been intended by this section. The exception, as was declared by the trial judge, simply applies to skimmed milk sold as skimmed milk. Without this exception all skimmed milk would have been declared adulterated under this statute, as it had to be under chapter 202 of the Laws of 1884, for the reason that no skimmed milk could reach the percentages required by the statute. As there existed a law regulating the sale of skimmed milk (chapter 220 of the Laws of 1878), which was expressly repealed by the law of 1884, and by the law of 1885, it is very evident that the Legislature did not intend to have skimmed milk sold as pure milk, or to except it from the provisions of section 1 when it was sold as pure milk, or without any notice to the purchaser of its having been skimmed.

The amendment to the section by chapter 577 of the Laws of 1886, was merely intended to prevent such quibbles as the one raised in this case. The addition of the words " provided it is sold for and as such " were only declaratory of the law as it then was. This is expressly stated at the end of section 7 of the Act. The rule that where a statute is amended, so as to read as stated, there is an implication that some change is made, is fully satisfied in this case by the omission of the provisions for the sale of skimmed milk outside of the county in which it is pro-

duced. No fair implication can arise that the words quoted above made any change in the existing law.

FINCH, J.—The appellant was convicted of selling adulterated milk under the provisions of chapter 183 of the Laws of 1885, as amended by chapter 458 of that year. Section 1 provides that "no person or persons shall sell or exchange any unclean, impure, unhealthy, adulterated, or unwholesome milk." It was proved that one Vanderburg, on August 25, 1885, purchased at defendant's store one pint of milk which was shown by chemical analysis, to have contained 89.04 per cent. of fluids and 7.78 per cent. of milk solids, and so, falling below the standard fixed by the act, came within its definition as adulterated milk. There was no dispute about these facts, but the contention of the defendant is, that he was not allowed to show an absence of criminal intent, or go to the jury upon the question whether it existed, but was condemned under a charge which made his intent wholly immaterial, and his guilt consist in having sold the adulterated article whether he knew it or not, and however carefully he had sought to keep on hand and sell the genuine article.

As the law stands, knowledge or intention forms no element of the offense. The act alone, irrespective of its motive, constitutes the crime. The conclusion was necessarily involved in our decision of People *v.* Cipperly, 101 *N. Y.* 634; 4 *N. Y. Crim. Rep.* 69; 37 *Hun*, 323; 3 *N. Y. Crim. Rep.* 385. On the trial of that case the question was directly presented. While the principal defense was the invalidity of the statute upon constitutional grounds, and that branch of the contest dwarfed all others in the discussion, it was, nevertheless, true that the defendant, by offers of evidence and exceptions to rulings and to the charge, insisted that there could be no conviction without proof of a criminal intent, and that he should be permitted to establish an innocent purpose.

The point was presented at General Term. If well

taken, it was ground for a reversal; but while that tribunal disagreed upon the constitutional question, it indicated no doubt about the other. The majority, who thought the law invalid, construed it as requiring a conviction upon proof of the sale of milk below the standard, "right or wrong," and said expressly that "The testimony that tended to show that he was careful, honest, and innocent of this transaction, ought to have been considered, and if believed ought to have resulted in his acquittal; but under this statute, such evidence can have no weight." The justice who dissented held that the law was constitutional and the conviction should be affirmed; a conclusion which he could not have reached if the question of intent had been erroneously excluded. That dissenting opinion we adopted on the appeal to this court and, reversing the General Term, affirmed the conviction. The wisdom or prudence of the law is not here in question. If there was any reasonable ground to doubt its meaning in the face of its plain language, that doubt was largely founded upon a possible inference from the terms of section 14 of the act of 1884 (chap. 202), which made the prohibited omissions or commissions "presumptive evidence" of a willful intent to violate the different provisions. It was argued that if intent was immaterial the presumption raised was needless. But in the amendment of 1885 that provision was omitted, and section 17 (chap. 458) enacted that the simple omission of things directed, or commission of things prohibited, should be evidence of the violation of the act. and was in force when the defendant made the sale for which he was convicted. There remains no reasonable doubt of the legislative meaning, and the constitutional power to so enact we have distinctly affirmed. The prudence of its exercise may be debatable, but is not indefensible. It is notorious that the adulteration of food products has grown to proportions so enormous as to menace the health and safety of the people. Ingenuity keeps pace with greed, and the careless and heedless consumers are exposed to increasing

perils. To redress such evils is a plain duty but a difficult task. Experience has taught the lesson that repressive measures which depend for their efficiency on proof of the dealer's knowledge and of his intent to deceive and defraud are of little use and rarely accomplish their purpose. Such an emergency may justify such legislation which throws upon the seller the entire responsibility of the purity and soundness of what he sells and compels him to know and to be certain. We see no reason to change our ruling either as to the construction of the act or its constitutionality.

An exception was taken to the charge of the court construing the provision of the statute relating to " skimmed milk." We do not think that question was in the case. The proof on the part of the prosecution was of the sale of one pint of milk which was below the lawful standard. That made a *prima facie* case. Why the milk was below the standard, or by what means the result had been accomplished, the prosecution were not bound to prove. If the effect came from skimming the milk, and the sale was within the exception of the statute, that was matter of defense, and especially for the reason that the fact, if it existed, was one peculiarly within the knowledge of the defendant, and which he could readily prove by his own testimony. But he gave no such evidence, and nothing in the proof raised the question in the case. The ruling, therefore, was immaterial, and the defendant not entitled to the charge which he asked. The judgment should be affirmed.

All concur, except Rapallo, J., not voting.

Judgment affirmed.