### PEOPLE v. EDDY.

*(Supreme Court, General Term, Fifth Department. January 23, 1891.)*

**1. ADULTERATION OF MILK—CRIMINAL INTENT.**
 On a prosecution under Laws N. Y. 1884, c. 202, § 1, making it a misdemeanor to sell adulterated milk, and section 13, providing that "if the milk be shown to contain more than 88 per centum of water or fluids, or less than 12 per centum of milk solids, which shall contain not less than 3 per centum of fat, it shall be declared to be adulterated," guilty knowledge or criminal intent need not be shown.

**2. SAME—EVIDENCE—CONSTITUTIONAL LAW.**
 The provision of such statute making chemical analysis conclusive evidence of guilt, and incapable of contradiction except by other chemical analysis, is not depriving a man of his liberty or property without due process of law. Following *People* v. *Cipperly,* 101 N. Y. 634, 4 N. E. Rep. 107.

Thomas H. Eddy was convicted of selling adulterated milk, and from an order of the court of sessions of Monroe county affirming the judgment of the police court of the city of Rochester, and an order denying a motion for a new trial, he appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Wm. H. Davis,* for appellant. *J. W. Taylor,* for the People.

DWIGHT, P. J. The prosecution was under chapter 202 of the Laws of 1884. By section 1 of that act the sale of any "unclean, impure, unhealthy, adulterated, or unwholesome milk" is declared to be a misdemeanor. By section 13 it is provided that "in all prosecutions under this act relating to the sale * * * of unclean, impure, unhealthy, adulterated, or unwholesome milk, if the milk be shown to contain more than 88 per centum of water or fluids, or less than 12 per centum of milk solids, which shall contain not less than 3 per centum of fat, it shall be declared to be adulterated." The provisions of this statute have received repeated interpretation at the hands of this court and of the court of appeals, and its operation and effect are no longer subject to discussion. It is settled that guilty knowledge or criminal intent not only are not required to be shown, but they need not even be presumed to exist; that neither is requisite to constitute the crime; that, "as the law stands, knowledge or intention form no element of the crime;" that "the act itself, irrespective of motive, constitutes the crime." *People* v. *Kibler,* 106 N. Y. 323, 12 N. E. Rep. 795; *Same* v. *West,* 106 N. Y. 293, 12 N. E. Rep. 610; *Same* v. *Schaeffer,* 41 Hun, 23. It is also settled that it was competent for the legislature to prescribe, as they have done in this case, a mode and kind of proof, namely, by chemical analysis, conclusive of guilt, and incapable of contradiction except by other chemical analysis. In the case of *People* v. *Cipperly,* 37 Hun, 324, it was held, by a majority of the general term in the third department, that to convict and punish a man for crime without proof of guilty knowledge or criminal intent, upon evidence arbitrarily prescribed, purely technical in character, and incapable of refutation by the ordinary modes of contradiction, was to deprive him of liberty or property without due process of law. But the learned presiding justice of that court held otherwise, and the dissenting opinion by which he upheld his views was adopted by the court of last resort as a correct exposition of the law. *People* v. *Cipperly,* 101 N. Y. 634, 4 N. E. Rep. 107. These decisions are conclusive upon all the real questions in this case. Under the law as thus settled, all the evidence given or offered by the defendant showing or tending to show that he neither knew nor had reason

to suspect that the milk sold by him was of less than standard quality; that it was in fact absolutely pure, and as it came from the udders of his cows; that his cows had been carefully selected, were in perfect health, cleanly kept, and well and properly fed; all the evidence tending to show, and which the jury, if the question might have been submitted to them, would probably have found, that the fraction of a few hundredths of 1 per cent. by which the milk fell below the statutory standard was due to the rapid and watery growth of the grass in a season of almost constant rains,—all this evidence was entirely unavailing to the defendant. It was irrelevant and immaterial, because it did not tend to controvert the evidence furnished by the chemical analysis, upon which evidence alone, by the terms of the statute, the milk must be "declared to be adulterated." In this view of the case there was no error to the prejudice of the defendant in the rulings of the police justice upon the admission of evidence, nor in his instructions to the jury. There being no evidence to impeach the correctness of the chemical analysis it was only a matter of form to submit to the jury the question whether the defendant's milk was "adulterated" within the definition of the statute. There was but one verdict which the jury could render, and the well-meaning attempt of the justice to reconcile their minds to the inevitable duty by a defense of the statute may not have been entirely successful, but it was entirely immaterial. The affidavits which seem to have been presented to the court of sessions as the basis of a motion for a new trial on the ground of newly-discovered evidence lack the requisites of proof for that purpose. The judgment and order appealed from must be affirmed, and case remitted to the court of sessions of Monroe county to proceed therein. All concur.