## PEOPLE *v.* THOMPSON.

(*Supreme Court, General Term, Fifth Department.* June 2, 1891.)

ADULTERATION OF MILK—EVIDENCE.

On an indictment under Laws N. Y. 1884, c. 202, § 1, which makes it a misdemeanor to sell or expose for sale any impure, unhealthy, or adulterated milk, defined by section 13 to be milk containing more than 88 per cent. of water, except (Laws 1885, c. 183) skimmed milk for use in the county in which it is produced, the evidence showed that defendant had several milk cans in his store, containing cream, pure milk, and skimmed milk, respectively. When the inspectors called on defendant he told them to step back where the milk was kept, and help themselves. It did not appear from which can the milk analyzed by the inspectors was taken, or that defendant exposed for sale the milk analyzed as pure milk, or otherwise than as skimmed milk. *Held,* that the evidence was not sufficient to sustain a conviction.

Appeal from court of sessions, Monroe county.

James J. Thompson was convicted of the crime of selling, or offering to sell, adulterated milk, and from the judgment of conviction, from an order denying defendant's motion for a new trial made on the minutes of the court, from an order overruling defendant's demurrer to the indictment, and from an order denying the defendant's motion in arrest of judgment, defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER, J.

*W. Henry Davis,* for appellant.  *Joseph W. Taylor,* for the People.

MACOMBER, J. The defendant was convicted at the Monroe sessions of the offense of having on hand, and offering for sale, on the 3d day of January, 1890, impure, unhealthy, adulterated, and unwholesome milk. The indictment of the defendant was found in pursuance of chapter 183 of the Laws of 1885, as amended by chapter 458 of the Laws of 1885. Section 1 of the former act declares that no "person or persons shall sell or exchange, or expose for sale or exchange, any unclean, impure, unhealthy, adulterated, or unwholesome milk," etc. The previous statute (chapter 202, Laws 1884, § 13) provides as follows: "In all prosecutions under this act relating to the sale * * * of unclean, impure, unhealthy, adulterated, or unwholesome milk, if the milk be shown to contain more than 88 per centum of water or fluids, or less than 12 per centum of milk solids, which shall contain not less than 3 per centum of fat, it shall be declared to be adulterated." Under this act, as we held in the case of *People* v. *Eddy,* 12 N. Y. Supp. 628, guilty knowl-

edge or criminal intent need not be shown in order to charge the defendant. The chemical analysis is deemed to be conclusive evidence of guilt, provided it shows that the ratio of fluids to solids is contrary to that which is prescribed by the terms of the statute. So that the only question before us is whether there is any evidence to show that the defendant was guilty of selling, or offering to sell, on the day named, milk which contained more than 88 per cent. of fluids. The evidence of the chemical analyzer showed that the milk in question fell below the statutory requirement, and the jury was probably correct in arriving at its conclusion that this evidence of the expert was more reliable and convincing than that of other persons not skilled in making chemical analysis. It appears that the defendant had been engaged in handling milk and cream for many years in the city of Rochester, and that, for four years prior to this charge, he had received milk from one Wadt. Two milk inspectors called on the defendant for the purpose of examining the quality of the milk kept and sold by him. There were standing together in defendant's store, at the time that these men made known their errand, four cans, one containing cream, another skimmed milk, the third butter-milk, and the fourth pure milk. Under the statutes above referred to, the keeping of skimmed milk is not made an offense when it is for use in the county where the same is produced. The defendant had a right not only to have on hand skimmed milk, but he had also the right to give it away; because the legislature had expressly exempted skimmed milk from the operation of its penalties, so long as the same is not sold or used as pure milk. An examination of the evidence in this case does not show that the milk which the state agents took into their possession, and of which the chemical analysis was made, was not taken from the can containing skimmed milk. The evidence is, in substance, that, after making their errand known, the defendant told them to step back to the place where the milk was kept, and help themselves. There is no evidence that the defendant offered or exposed for sale the milk which was the subject of this chemical analysis, and upon which the defendant was convicted, as wholesome and pure milk, and not as skimmed milk; and for this reason we think the conviction was erroneous, and the judgment thereon should be reversed. Other questions are raised in the record, but, as most of them may not arise again, we do not deem it necessary to express our views thereon. The judgment and conviction should be reversed, and new trial granted.