(Cuyahoga County Court of Common Pleas.)

S. M. STRONG et al. v. THE STATE OF OHIO.

Prosecution under law against sale of adulterated food—Want of knowledge is no defense—What to be considered adulteration of articles of food.

(Decided July 20, 1895.)

---

DELLENBAUGH, J.

This is an action brought in error by plaintiffs asking for the reversal of a judgment rendered by E. H. Bohm, a Justice of the Peace, within and for Cleveland Township, in said county and state. Originally, the prosecution was based upon the following affidavit:

"The State of Ohio, Cuyahoga County, ss: Cleveland Townhsip.

"Before me, E. H. Bohm, a Justice of the Peace in and for said county, personally came H. C. Lowrie, who being duly sworn according to law deposeth and saith that on or about the 14th day of January, A. D. 1895, at the County of Cuyahoga, one S. M. Strong, L. A. Cobb and E. L. Strong, doing business under the firm name and style of Strong, Cobb & Company, in the City of Cleveland, Cuyahoga County, State of Ohio, did unlawfully offer and expose for sale in the City of Cleveland, Cuyahoga County, State of Ohio, to H. C. Lowrie, a certain mixture and compound consisting of glucose syrup, pepsin, sulphurous acid, and hydrocloric acid, under the name of "Paskola, a Flesh Forming Food," as and for an article of food, to be used as and for human food, without having the said mixture and compound, consisting of glucose syrup, pepsin, sulphurous

acid, and hydrocloric acid distinctly labeled as a mixture and compound; and without having the name and per cent. of each ingredient entering into and forming said mixture and compound with the name and per cent. of each separate ingredient entering into and forming the said mixture and compound, distinctly labeled as such; and without stating upon the said package containing the said mixture and compound, the ingredients entering into and forming the said mixture and compound sold as aforesaid, that the same was not injurious to health, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

(Signed)          H. C. Lowrie.

Sworn to and subscribed before me this 25th day of April, A. D. 1895.

E. H. Bohm, Justice of the Peace."

Said affidavit is predicated upon an act of the legislature of the State of Ohio, entitled "An act to provide against the adulteration of food and drugs," passed March 20, 1884, (81 O. L. 67), and amended April 22, 1890, (87 O. L. 248)

Section 1 of said act provides, "That no person shall, within this state, manufacture for sale, offer for sale, or sell any drug or article of food which is adulterated, within the meaning of this act."

Section 2, in defining what is meant by "food" provides that "the term 'food,' as used herein, shall include all articles used for food or drink by man, whether simple, mixed or compound."

Section 3 prescribes what shall be deemed and considered an adulteration of any article or thing used for food or drink by man. Subdivision "b" of said section 3 provides, that in case of food, it may be unlawfully adulterated in any one of seven different ways, to wit:

1. "If any substance or substances have been mixed with it, so as to lower or depreciate or injuriously affect its quality, strength or purity:

2 "If any inferior or cheaper substance or substances have been substituted wholly or in part for it:

3. "If any valuable or necessary constituent or ingredient has been wholly or in part abstracted from it:

4. "If it is an imitation of, or is sold under the name of another article:

5. "If it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rotten animal or vegetable substance or article, whether manufactured or not—or in case of milk, if it is the product of a diseased animal:

6. "If it is colored, coated, polished or powdered, whereby damages or inferiority is concealed, or if, by any means, it is made to appear better or of greater value than it really is:

7. "If it contains any added substance or ingredients which is poisonous or injurious to health; provided that the provisions of this act shall not apply to mixtures or compounds recognized as ordinary articles or ingredients of articles of food if each and every package sold or offered for sale be distinctly labeled as mixtures or compounds with the name and per cent. of each ingredient therein, and are not injurious to health."

Section 5 provides that "any person found guilty of manufacturing, offering for sale, or selling an adulterated article of food under the provisions of this act shall be adjudged guilty of a misdemeanor, etc."

It is alleged in the petition in error that on the 7th day of May, 1895, a trial was had upon said affidavit before said justice of the peace, and

that he found said plaintiffs in error guilty as therein charged, and sentenced each of them to pay a fine of twenty-five, ($25) dollars and costs.

Plaintiffs in error further aver and say that by said proceeding they have been injured, and that certain errors occurred therein before said justice, as set fourth in their petition in error.

The errors insisted on by them at the hearing in this court are (1st) That the justice erred in excluding testimony offered by plaintiffs in error.

On the trial of the case, Samuel M. Strong, now deceased, one of the plaintiffs in error, was examined as a witness in their behalf, and asked the following question—

"Had you any information up to the 14th day of January last, what articles composed this mixture, called "Paskola" contained in the bottle"?  An objection was sustained by the Court and plaintiffs in error offered to show, in answer to said question, that the witness had no information or knowledge regarding the component parts of the said 'Paskola," up to the time it was sold, nor had the plaintiffs in error any knowledge up to that time.

Now, is guilty knowledge one of the essential elements of the offense charged in said affidavit within the meaning of the statute upon which the same is predicated?  Let us see.

It is a well settled principle of law, established by an almost unvarying current of authorities both in this country and in England, that guilty knowledge on the part of the seller need not be averred and proved, unless it is an essential element of the offense charged.  In the opinion just delivered by the Circuit Court of Summit County, in David Meyer v. The State, 10 Ohio C. C. Rep. 226, Hale, J., says: "It may be fairly inferred that the legislature of the state intended by this positive enactment to prohibit absolutely the sale of adulterated wine, and that knowledge by the accused, of its adulteration, is not an essential element of the crime. It must be conceded that the object and purpose of this statute, if not wholly subverted, would be weakened to that extent that it would in no wise accomplish the results intended by its enactment, if the accused may go acquit by simply showing that he did not know the nature of the article sold.  Food is sold to be consumed.  The purchaser is under no obligation to analyze the article purchased for that purpose, to ascertain whether it contains substance injurious to health, nor would it be practicable for him to do so, and it should be no answer to his complaint that the seller had no knowledge of its impurity; nor should it be a defense to the seller when called to an account by the state to answer that he was ignorant of the substance he was selling.  We see no injustice in holding the seller of food products responsible for what he sells, and in casting upon him the burden of knowing whether the food sold, does, or does not, fall within the prohibition of the statute, with that care and honesty which is incumbent on the seller of such products."

In People v. Kibler, 106 N. Y. 321, the defendant was charged with selling adulterated milk.  The defendant was not permitted by the trial court to show an absence of criminal intent, or go to the jury upon the question whether it existed, but was condemned under a charge, which made his intent totally immaterial, and his guilt consist in having sold the adulterated article, whether he knew it or not.  Finch, J., in delivering the opinion of the court, said:

"As the law stands, knowledge or intention forms no element of the offense."

In the case of Altschul against the State of Ohio, the Circuit Court of Cuyahoga County, in a prosecution under this statute, held that it was not necessary for the prosecution to aver in the affidavit, and prove upon

the trial, that the accused knew the article sold to be adulterated. (8th Ohio C. C. Rep. 214.) Furthermore, in support of this proposition we cite 3rd Greenleaf on Evidence, Sec. 21; State v. Tomasi, 31st Atl. Rep. 780, and numerous cases cited in the opinions, and especially and particularly the cases cited in Judge Hale's opinion in Myer v. The State.

2nd. It is furthermore urged by the plaintiffs in error that the court erred in overruling plaintiffs' motion in arrest of judgment, for the reason that said affidavit does not state facts sufficient to constitute an offense under the laws of Ohio. The statute in question in the case at bar, was passed to prevent and choke fraud, and protect the public health, by prohibiting and restraining the manufacture and sale of alleged food and medicinal substances and compounds, which furnish the temptation to commit fraud and kindred iniquity, and which may be injurious to and deceive the public.

This legislation is justified upon the ground that the use of the inhibited "articles used for food and drink by man," is injurious to the public health; and particularly because the adulterated articles of food or drink cannot be easily distinguished from the genuine, and are so readily substituted for it, as to work a fraud upon all the people who actually consume and use such articles and things, as well as upon purchasers of the counterfeit food, in place of the genuine food or drink.

Any article of food or drink, either manufactured or sold as being what it is named, would indicate to the public, that it is a genuine article of its kind and species, which, if not pure, and free from adulteration of every kind, would fairly come within the spirit and object of the act, without reference to the extent of such adulteration, or the peculiar process of manufacture, and though the product be wholly simulated.

The enactment of laws for the protection of the public from fraud and deception in articles "used for food and drink by man, whether simple, mixed or compound," is a legitimate, needful and necessary exercise of the police power of the state by the legislature. Such legislation is clearly within the scope of legislative authority conferred by the Constitution of Ohio.

"A fraud is, of course, a trespass upon another's private rights, and can always be punished when committed. It is, therefore, but rational to suppose that the State may institute every reasonable preventative remedy when the frequency of frauds or the difficulty experienced in circumventing them is so great that no other means will prove efficacious. Where, therefore, police regulations are established which give to private parties increased facilities for detecting and preventing fraud as a general proposition, these laws are free from all constitutional objections."— Tiedeman on Police Lim., 207.

Now, let us see whether the contention of the plaintiffs in error, that the affidavit does not state facts sufficient to constitute an offense, should be sustained or not. A careful examination of said act, entitled, "An act to provide against the adulteration of food and drugs," clearly discloses that the affidavit in the case at bar is predicated upon the 7th paragraph of division "b" sec. 3, prescribing when "an article shall be deemed to be adulterated" within the meaning thereof. Said paragraph 7 provides that "if it" (meaning, of course, an article "used for food or drink by man, whether simple, mixed or compound") contains "any added substance or ingredient, which is poisonous, or injurious to health; provided that the provisions of this act shall not apply to mixtures or compounds, recognized as ordinary articles or ingredients of articles of food if each and every package sold or offered for sale be distinctly labeled as mixtures or compounds, with the name and per cent. of each ingredient therein, nad are not injurious to health." (87 O. L. 248.)

Now, clearly, the real gist of the offense complained of (and attempted to be alleged in the affidavit) within the plain and self-evident meaning of paragraph 7, is what?

Why, it is the manufacture for sale, offering to sell, or the selling of any article, used for either "food or drink by man, whether simple, mixed or compound," if it, i. e., such food or drink contains "any added substance or ingredient which is poisonous or injurious to health." Nowhere in the affidavit complained of, is it alleged that "Paskola, a Flesh Forming Food," sold as and for human food, or any of the several ingredients composing the same, consisting of "glucose syrup, pepsin, sulphurous acid, and hydrochloric acid" contained first, "any added substance or ingredient which was poisonous;" or, second, "any added substance or ingredient injurious to health."·

"The rules of criminal pleading require that, in all statutory offenses the offense must be set out in substantially the words of the statute." (11 Ohio, 405.)

It must be borne in mind that we have no common law offenses in this state. No act or omission, however hurtful or immoral in its tendencies, is punishable as a crime in Ohio, unless such act or omission is specially pleaded, enjoined or prohibited by the statute laws of the state. It is, therefore, idle to ·speculate upon the injurious consequences of permitting such conduct to go unpunished, or to regret that our criminal code has not the expansiveness of the Common Law." (Smith v. State, 12 Ohio St. 469.)

For the reasons already stated, we find that the affidavit in the case at bar, is fatally defective in not alleging that the article sold, that is, "Paskola, a Flesh Forming Food," contained—

(1st) Any added substance or ingredient which was poisonous; or, (2nd) any added substance or ingredient injurious to health; and it is, therefore, unnecessary for the court to go any further in deciding this case, because the real gist of the offense sought to be charged was entirely left out of the affidavit, which alone is sufficient reason for reversal.

Now, therefore, the conclusion to which we have come—that the affidavit under consideration does not charge any crime or offense under the laws of Ohio—requires the reversal of the judgment and sentence of the court below, and the discharge of the plaintiffs in error. Judgment accordinlgy.

Burke & Ingersolls, for plaintiffs in error.

Clark & Thompson, for defendant in error.