See note to People v. Sheldon, 9 N. Y. Cr. 312, on "Criminal Conspiracy."

---

## New York Supreme Court — Appellate Term.

### January, 1897.

### PEOPLE v. THOMAS E. WRIGHT.

1. Criminal law—Adulteration of milk—Proof.

> Proof merely of possession by servant of defendant of impure milk "for delivery down town," is insufficient to support recovery under chapter 338 of 1893.

2. Same.

> There must be a sale or an exposure for sale of some milk in order that the penalty may be incurred.

3. Same.

> There is no exposure for sale where the milk is not upon the wagon for sale, but for delivery to some person or persons undisclosed.

**4. Same.**

> Nor is there evidence of a sale merely because there was an intention of delivery.

Appeal from judgment rendered by the Justice of the Eighth Judicial District Court. Action for the recovery of a penalty, upon the relation of the Commissioner of Agriculture, under chapter 338 of the Laws of 1893.

Brooke & Brooke, for appellant.

Benjamin Estes, for respondent.

BISCHOFF, J.—Under a statute providing for the recovery of a penalty against any person selling or exchanging, or offering or exposing for sale or exchange, adulterated milk, Laws 1893, ch. 338, sec. 22, the defendant has been held liable, and upon this appeal the question is presented whether the facts proven by the relator brought the case within the statute, the defendant having adduced no evidence in defense, relying upon the failure of proof sufficient to charge him.

It was shown that the defendant is a milk dealer, and that upon a wagon, driven by his servant, agents of the relator found cans of milk, the contents of which proved upon examination to be impure and within the inhibition of the statute, which prescribes the test of adulteration.

The milk thus examined was taken from the defendant's wagon in the public street at about one o'clock in the morning, and the cans were intended, according to the defendant's driver's statement as made to relator's agents, "for delivery down town."

This was all the proof, and we must hold it to have been insufficient to support a recovery of the penalty in question.

The statute is penal, and so to be strictly construed, although the penalty is recoverable in a civil action, (23 Am. & Eng. Ency. of Law, p. 378, and cases cited), and while the construction should not be such as to defeat the object sought, (U. S. v. Hartwell, 6 Wallace, 395), this act, properly construed, results in the attainment of that object under circumstances not involving injustice to the persons sought to be charged. The reasonable construction

of the words used works that attainment with justice, giving full effect to the meaning of those words.

To bring the case within the statute it must be shown that the offender sold the milk or offered or exposed it for sale; in this case we have not to do with any exchange or offer to exchange, and the principal inquiry is whether the proof shows an exposure for sale.

The statute does not declare the mere possession of adulterated milk to be unlawful; it looks only to the protection of the public, which might suffer from the traffic in impure articles of food, and therefore the act does not apply unless there is some action taken or intended to be taken by the person charged, whereupon traffic in the adulterated article may be founded.

An affirmative act, therefore, must be shown, either a sale or an offer to sell; and an exposure for sale is in effect an offer, a tacit holding out of the goods for sale, or, in other words, an exhibition of the goods under circumstances such as would reasonably lead persons to consider them offered for sale.

Thus some intent upon the part of the dealer must appear, either express, as in the case of a sale, or implied, where there is an offer predicated upon an exposure for sale, since the words employed—sale, offer and exposure for sale—are deprived of meaning unless an intent is imported.

With this in mind the following provision of the act is to be noticed (sec. 7): "The doing of anything prohibited by this chapter shall be evidence of the violation of the provisions of this chapter relating to the thing so prohibited. * * * The intent of any person doing or omitting to do any such act is immaterial in any prosecution for a violation of the provisions of this chapter."

This provision cannot reasonably be taken as intending that the words "sale" and "exposure" for sale, should be given a meaning other than their logical meaning.

Where a sale or exposure for sale is shown, then there is a violation of the law, but not before, and the act of the seller is made evidence of a violation; the sale or exposure for sale implies an intent, and so proof sufficient to show a violation involves, also, proof of intent, founded at least upon inference from the circumstances.

But, says the statute, after the violation is shown, the intent becomes immaterial ; and yet there must be intent, impliedly, as a constituent of the violation.

Unless, then, this statute aims to render it unlawful for one merely to have adulterated milk in his possession, which it clearly does not, the word "intent," as used in section 7, applies to something other than the elements of the offense—such as they are in this instance—and does not relate to the elemental proof of the offense ; in this aspect a rational interpretation of the word, reconcilable with the apparent intention of the legislature and with the other parts of the statute, is readily arrived at.

The word evidently refers to the intention of the offender to sell adulterated milk, and any excuse founded upon mistake in the quality of the article is thereby made immaterial as matter of defense. Such a defense, in view of the difficulty of determining the quality of milk by mere inspection, would be plausible and not readily avoided, and, therefore, the statute makes the intent so far of no importance, leaving it to the distributors of milk to see that the mistake does not occur. The possession of impure milk is, to this extent, at the dealer's own risk, and the enactment, as thus construed, appears to be a wise one in the interest of the public.

Still there must be a sale or an exposure for sale (with the implied intent) of some milk in order that the penalty may be incurred, because of the adulteration of the article sold, and the proof in this case fails to establish the fact that the milk found to be impure by the relator's agents was either sold or offered for sale or exposed for sale.

There was no exposure for sale since the milk was not upon the wagon for sale, but for-delivery to some person or persons undisclosed. The cans were, it is true, exposed to the view of persons upon the street and of the agents of the relator, but not for the purposes of sale, actually or by inference, the place of exposure not being in this instance a place recognized as a place of sale.

Nor was there evidence of a sale merely because there was an intention of delivery. The intended delivery may well have been to an agent of the defendant for retention of the article pending examination or analysis, or in the course of a transaction not a sale, but a consignment to another for subsequent sale should the

milk prove fit for the market; or there may have been a gift of the milk for delivery to the donee.

It may be suspected that there was a sale, because an intended delivery, but the proof was lacking sufficient to render this defendant liable for the penalty, the fact of the intended delivery being as consistent with an intention to comply with the law as to violate or attempt to evade it, and an inference of wrongdoing, under these circumstances, could not be accepted as proof strong enough to preponderate over the existing presumption of innocence.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

## NOTE ON "ADULTERATION OF MILK."

Adulteration of milk was made a misdemeanor by chapter 467 of 1862, People v. Harris, 123 N. Y. 73; 33 S. R. 168.

Under chapter 202 of 1882, it was held that the legislature may prohibit the sale of milk below a certain standard, whether such milk is, or is not, wholesome. People v. Cipperly, 101 N. Y. 634, without opinion; 4 N. Y. Cr. 69; rev'g 3 id. 385; 37 Hun, 324. The decision of the court of appeals was based upon the dissenting opinion of Justice Learned in the court below.

Under chapter 202 of 1884, it was held in People v. Eddy, 35 St. Rep. 146; 12 N. Y. Supp. 628, that guilty knowledge or criminal intent need not be shown to establish the offense. The chemical anaylsis was deemed to be conclusive of guilt, provided it showed that the ratio of fluids to solids is contrary to that which is prescribed by the terms of the statute.

The offense of selling adulterated milk contrary to the provisions of chapter 202 of 1884, and chapters 183 and 458 of 1885, is established by the proof of a sale of milk, which is shown to be adulterated when tested by the standard set up by the act. People v. Schaeffer, 41 Hun, 25. To constitute the offense, neither knowledge nor intent need be shown. Id. See People v. Cipperly, 3 Eastern Rep. 558; rev'g 37 Hun, 319.

The act of 1884 was superseded by the later act of 1885. People v. Harris, 123 N. Y. 75; 33 St. Rep. 168. But quaere. See subsequent amendment, chapter 193 of 1885.

Under chapter 183 of 1885, the question whether milk is adulterated is to be determined from chemical analysis alone. People v. Hodnett, 68 Hun, 341; 51 S. R. 895.

Under chapter 183 of 1885, as amended, the keeping of skimmed milk was held not to be made an offense, where it was for use in the county where the same was produced. People v. Thompson, 38 St. Rep. 317.

Under the act of 1885, as amended by chapter 458 of that year, it was held that criminal knowledge or intent formed no element of the offense. People v. Kibler, 106 N. Y. 321; 8 St. Rep. 707. All that was requisite to establish the offense was to show a sale of milk falling below the standard fixed by the act and coming within its definition of adulterated milk. Id.

The provision of section 3, chapter 183 of 1885, does not make a fraudulent intent a necessary ingredient of the crime. People v. West, 106 N. Y. 293; 8 St. Rep. 713. It does not extend so f r, it seems, as to make it criminal for a dairyman, conducting a butter or cheese factory and manufacturing from milk exclusively furnished by himself, to supply the factory with milk, from his own cows, mixed with water. Id. This provision was held to be a valid exercise of the legislative power. Id.

See §§ 407, 408a of Penal Code; chap. 407 of 1881; chap. 246 of 1882; chap. 202 of 1884; chaps. 176, 183, 193, 427, 458 of 1885; chap. 477 of 1886; chaps. 223, 403, 583 of 1887; chap. 140 of 1893; chaps. 338, 692 of 1893; chaps. 143, 426 of 1894.