PEOPLE v. BEAMAN.

(Supreme Court, Appellate Division, Fourth Department.   March 1, 1905.)

1. FOOD—ADULTERATED MILK—RIGHT TO PROSECUTE—COMMISSIONER OF AGRICULTURE—POWERS.

Laws 1893, p. 655, c. 338 (the Agricultural Law), creating the Department of Agriculture, and making it the duty of the Commissioner of Agriculture to execute the laws pertaining to agriculture and agricultural products, and to cause actions to be brought for the recovery of penalties, etc., did not give the commissioner exclusive power to take samples of milk and institute prosecutions for the sale of adulterated milk, so as to deprive all other officers of the power formerly given them by statute to institute such proceedings.

2. SAME—DEFENSES—"HERD SAMPLE."

Agricultural Law, Laws 1893, p. 666, c. 338, § 37, makes the selling of adulterated milk, as defined by section 20 (page 660), a misdemeanor. Section 12 (page 659) declares that, when a sample of milk has been taken by the Commissioner of Agriculture with a view of prosecuting the producer for selling adulterated milk, another sample shall afterward be taken of the mixed milk of the herd, and, if this sample shall contain no higher percentage of milk solids and fats than the sample taken from the creamery or other place, no action shall lie against the producer. Held, that the fact that the herd sample is no better than the other sample is a bar only to an action by the Commissioner of Agriculture for a penalty, and not to a criminal prosecution by other authorities for selling adulterated milk.

Appeal from Special Term, Monroe County.

Charles A. Beaman was convicted of selling adulterated milk, and appeals.   Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

John A. Bernhard, for appellant.
Robert Averill, for the People.

HISCOCK, J.   The learned county judge, in a carefully prepared and very complete opinion, has set forth the reasons which led him to an affirmance of defendant's conviction, and we agree with him in the conclusion reached in favor of such affirmance.

The defendant was a producer and peddler of milk in the city of Rochester.   May 23, 1903, two inspectors of the health department of said city took samples from the peddling can from which he was then supplying customers, and also from two other cans upon his wagon. The samples were so taken after the milk had been fully stirred, in duplicate, one being given to the defendant and the other retained by

the inspectors. This prosecution was based upon the sample taken from the peddling can, and there was no dispute in the evidence that it fell below the standard. A few days after taking the samples, the inspectors went to defendant's farm and took a herd sample. The defendant desired, but was not allowed, to show upon the trial the standard of such herd sample.

Two reasons are urged for the reversal of the conviction, which deserve consideration. First, it is insisted that under the agricultural law the duty and exclusive right is conferred upon the Commissioner of Agriculture and his assistants of taking samples of milk, and instituting prosecutions where the milk is below the statutory standard. This proposition, if correct, of course leads to the other one; that the inspectors of the city of Rochester had no right to institute this prosecution. We are unwilling to adopt this construction of the statute. Long before the agricultural law was passed and the Department of Agriculture created, laws were in force defining, and, under the penalty of criminal prosecution, prohibiting, the sale of adulterated milk. Of necessity, the institution of these proceedings was left to persons other than a state department or official, because the latter did not exist charged with any such duty. When the Agricultural Law (Laws 1893, p. 655, c. 338) was adopted, it is true that a special department was created to look after its enforcement. We find in various sections certain expressions to the effect that said department "shall be -charged with the execution of the laws pertaining to agriculture and agricultural products" (section 2); and, again, that the Commissioner of Agriculture "may cause an action or proceeding to be brought in the name of the people for the recovery of" penalties (section 8). And there are still other sections which confer upon the commissioner and his officers and agents certain facilities for inspection and for procuring evidence. It certainly would be a very radical departure, even if permissible, for the Legislature to withdraw from all officers throughout the state charged with the investigation and prosecution of criminal offenses, from grand juries and individuals, the right to procure and present evidence of a misdemeanor, and to confer it upon one official. The courts would require very clear evidence of the legislative intent to attempt to inaugurate any such policy as this, even if it could be legally carried into effect. An inspection of the entire statute referred to fails to convince us that the Legislature had any intention of making this attempt. While it was the undoubted purpose to confer upon the department created general oversight over the subject therein provided for, and to impose upon it and its officers and agents the special duty of securing an enforcement of the law, it is plain that there was and is nothing in this intention and the provisions resulting therefrom which excludes the right to institute such a prosecution as this in the manner in which it was done.

We pass to the second criticism made by defendant upon his conviction, because evidence was excluded of a herd sample, his contention being that, if this sample had not been superior in standard to that taken by the inspectors, a defense would have been presented to this prosecution. This argument is based upon the amendment made by chapter 557, p. 1304, Laws 1898, to section 12 of the agricultural law, which

provided that when a sample of milk had been taken by the Commissioner of Agriculture or his representative—

"With a view of prosecuting the producer of such milk for delivering, selling or offering for sale adulterated milk, the said Commissioner of Agriculture or assistant or his agent or agents shall within ten days thereafter, with the consent of the said producer, take a sample in the like manner of the mixed milk of the herd of cows from which the milk first sampled was drawn. * * * If the sample of milk last taken * * * shall upon analysis prove to contain no higher percentage of milk solids, or no higher percentage of fat than as the sample taken at the creamery, factory, platform or other place, then no action shall lie against the said producer," etc.

The appellant argues that it could not have been the intention of the Legislature to deny to a defendant in a criminal prosecution for selling adulterated milk all of the defenses which would have been available in a merely civil action for penalties, and that therefore he should have been allowed to prove, if possible, as a defense to this proceeding, the fact of a herd sample not better than the sample taken by the inspectors, and which would have been a bar to an action by the Commissioner of Agriculture for a penalty. Of course, this contention involves purely and simply a construction of the statute which the Legislature has adopted. It is fully settled that it had the right to affix the character of an "adulterated" production to milk falling below a certain standard, and to prohibit the sale of such adulterated milk under the penalty of a criminal prosecution, which would not be defeated by proof that the milk had not been actually adulterated after leaving the cow, or by the ignorance or good intentions of the person selling the milk. People v. Kibler, 106 N. Y. 321, 12 N. E. 795; People v. Cipperly, 101 N. Y. 634, 4 N. E. 107. It is also perfectly certain that the Legislature had the right, as it saw fit, to impose or not an additional liability for the sale of adulterated milk, in the form of a penalty to be recovered by civil action. Having the power to provide a criminal liability, and to add or not a civil liability by way of penalty, we know of no reason why it could not, without altering or impairing the criminal liability, provide that in certain cases the additional civil liability of a penalty should not be enforced, and the query is whether it has not effected just this result by providing that a herd sample under certain circumstances should be a bar to a civil action. It was by chapter 554, p. 651, Laws 1897, that the provision of section 408a of the Penal Code, making the sale of adulterated milk a misdemeanor, was transferred to and became part of section 37 of the agricultural law. Said section as so amended clearly and unqualifiedly makes any person violating section 22 by selling adulterated milk as defined by section 20 guilty of a misdemeanor. It authorizes a criminal proceeding instituted by and in behalf of the people. Section 12, already referred to, provides for the taking of a herd sample by the Commissioner of Agriculture or his representative, and that when this sample is of a certain standard "no action will lie." The "action" contemplated is clearly a civil one for a penalty, and we do not think that any reasonable construction of the language used could interpret it as applying to or prohibiting a criminal prosecution under section 37.

There is another practical obstacle to the construction claimed by appellant. Under the statute the only herd sample recognized as a bar

to a prosecution is one taken by the Commissioner of Agriculture or his representative. Those officials alone are authorized and empowered to take it, and the sample so taken by one of them is alone recognized under the law. No inspector of the city of Rochester or private individual is authorized to take such a sample, and if we are right in our conclusion that such an inspector may take a sample of milk being peddled, and institute a prosecution for the selling thereof when below the standard, such proceeding is not qualified or affected by the provision for taking a herd sample within a certain length of time, which in terms applies only where the Commissioner of Agriculture or his representative has taken a sample for the purpose of prosecuting a civil action. The herd sample taken by the Rochester inspectors had no more relation to the sample upon which this prosecution is based than would a herd sample taken by the defendant or any other individual. The statute does not recognize it, or give it any efficacy for the purposes claimed by defendant. Therefore it seems to us, for all these reasons, that no error was committed in ruling out evidence of the herd sample.

Some complaint is made by defendant of the manner in which the sample was taken from his can, but we think this question has already been passed upon by us in People v. Laesser, 79 App. Div. 384, 79 N. Y. Supp. 470. It is also said that the police justice did not properly or fairly instruct the jury. The counsel for the defendant took one or two specific objections to something said or done by said justice which are not tenable. He took a general objection to the entire charge, and it is well settled that this was not a sufficient or proper basis for presenting any alleged error. People v. Hodnett, 68 Hun, 341, 22 N. Y. Supp. 809; Arnold v. People, 75 N. Y. 605. Moreover, a review of the entire charge does not disclose to us any substantial error committed at the expense of the defendant's rights. The judgment of conviction should be affirmed.

Judgment of conviction affirmed. All concur.