THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* HERSHEY FARMS, INC., Defendant.

Court of General Sessions of County of New York, January 2, 1941.

*William C. Chanler, Corporation Counsel* [*Charles C. Weinstein* of counsel], for the plaintiff.

*Schneider & Arzt* [*Samuel S. Schneider* of counsel], for the defendant.

FRESCHI, J. The defendant, Hershey Farms, Inc., moves, under section 484 of the Code of Criminal Procedure, for a remission of the fines, or a portion thereof, imposed on February 27, 1940, by a city magistrate, sitting as a Court of Special Sessions, at a Municipal Term, pursuant to sections 140 and 142 of the Inferior Criminal Courts Act, in three cases wherein the defendant pleaded guilty of possessing adulterated milk in violation of the Sanitary Code. The total fines amount to $400  These pleas and fines followed immediately the trial of another case against this corporation, involving a similar violation of law, wherein that court adjudged the defendant guilty and sentenced it to pay a fine of $250, notwithstanding the recommendation of the corporation counsel that a fine of $150 should be " considered adequate." An appeal from such conviction resulted in a reversal thereof on the facts and the law. and the court ordered a remission of the latter fine. (*People* v. *Hershey Farms, Inc.*, 259 App. Div. 871.) All

the said fines were paid under protest, but no appeal was ever taken from any of the other remaining judgments. Payment of the penalties does not bar or impair the right of the defendant to have its conviction reviewed by the appellate court. (*People v. Marks*, 64 Misc. 679.) The defendant now complains of the severity of the remaining fines which it seeks to have remitted in this court, and contends that, although they are not excessive in law, still they show that the magistrate " abused his discretion," and was biased in fixing such amounts, particularly by considering the previous court record of this company. According to the opposition papers submitted by the corporation counsel, it appeared that this company has been repeatedly penalized between the years 1934 and 1940 by many fines imposed against it, ranging from five to ten dollars each as the maximum, and in several cases sentence was suspended. It appears also that on January 31, 1939, its officers were reprimanded regarding the use of spurious tags.

The legal limit of the punishments for such offenses prescribed by the statute as are here involved is $500 fine in each case. (New York City Charter, § 558, subd. D; Penal Law, § 1937.)

The adulteration of milk is a serious offense and its suppression is a matter of vital concern to the well-being of the public. Where it is sold or possessed for sale for human consumption, the offense, in my judgment, calls for a substantial punishment that is commensurate with the gravity of the offense as shown by the circumstances of the case in the light of the past record of the offender. In the case of *People* v. *Kibler* (106 N. Y. 321, 324) the court said: " It is notorious that the adulteration of food products has grown to proportions so enormous as to menace the health and safety of the people. Ingenuity keeps pace with greed, and the careless and heedless consumers are exposed to increasing perils. To redress such evils is a plain duty but a difficult task. Experience has taught the lesson that repressive measures which depend for their efficiency upon proof of the dealer's knowledge and of his intent to deceive and defraud are of little use and rarely accomplish their purpose. Such an emergency may justify legislation which throws upon the seller the entire responsibility of the purity and soundness of what he sells and compels him to know and be certain." In the case of *Plumley* v. *Massachusetts* (155 U. S. 461, 472) the Supreme Court said: " If there be any subject over which it would seem the States ought to have plenary control, and the power to legislate in respect to which it ought not to be supposed was intended to be surrendered to the general government, it is the protection of the people against fraud and deception in the sale of food products."

Where the defendant attacks the justice of a sentence on an application for a remission, he must prove reasonable grounds justifying it. The burden must be placed upon the one who challenges the particular exercise of the power and discretion of the court. Applications of this sort are not mere matters of form; nor is a remission of a fine to be ordered *pro forma* predicated upon a comparison of previous fines which the company's attorneys now urge as a standard of punishment, or to be ordered as a matter of private interests, calculated on the basis of the effect of such fine on the business of the party concerned, present or future. Government and the administration of its justice must work in the interests of the whole public; and a mere comparison of the present fines with those heretofore imposed for similar infractions of the law affords no ground for this court's action in changing the fines here complained of by reduction of the amount or a remission of the whole thereof. A previous court record is always pertinent in measuring and fixing punishment in a given case. Upon the question of sentence the persistency of the violator should be considered as a proper factor.

The imposition of excessive fines is prohibited by the Constitution of this State. (N. Y Const. art. I, § 5.) It is stated in 15 American Jurisprudence (Criminal Law, § 551) that " What is an excessive fine, however, is a relative proposition dependent upon many factors," and [that " In determining the excessiveness of a fine the courts may take into consideration the ability of the defendant to pay." It further states: " A fine is excessive if it seriously impairs his ability to gain a livelihood. The Legislature has power to fix heavy penalties on corporations having great incomes and controlling vast properties although such penalties, if inflicted on individuals, might appear excessive. Whether a fine is excessive and unjust is a question of law, and the court will not adjudge a fine to be so disproportionate to the offense as to come within the constitutional prohibition unless there is a plain conflict between the supreme law and an enactment of the Legislature. A fine within the limit of a statute is within the discretion of the trial judge, and is not the subject of review unless the jury is required by law to assess fines when of a certain amount or greater."

The measure of proper punishment is always a serious problem; it is not based on impractical theories. When a judge with a practical knowledge of affairs and an experience, taking into account all the facts of a case, gives careful consideration to the offense, its degree, whether the violation is one or many, and imposes a sentence that he holds to be a deterrent, then truly is he exercising his discretion in the performance of his judicial duties. Chief

Justice MARSHALL in *Osborn* v. *Bank of United States* (9 Wheat. 738, 866), speaking for the court, said: " Judicial power, as contradistinguished from the power of the laws, has no existence. Courts are the mere instruments of the law, and can will nothing. When they are said to exercise a discretion, it is a mere legal discretion, a discretion to be exercised in discerning the course prescribed by law; and, when that is discerned, it is the duty of the court to follow it. Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the Legislature; or, in other words, to the will of the law."

The magistrate, in the first instance, was cognizant of all the facts of these cases and had before him the record of this defendant as a prior violator of the Sanitary Code. He exercised his discretion in the matter of punishment; and it must stand upon review, unless a consideration of the particular circumstances justifies the claim that that punishment is arbitrary, unreasonable or excessive in fact or as a matter of law, and that it does not subserve but rather impedes or defeats the ends of justice. (See Bowers on Judicial Discretion of Trial Courts, chap. 2, p. 13, " Definition and Range of Judicial Discretion," and cases therein cited; 18 C. J. § 3, pp. 1134, 1135.)

Looking through cases of other jurisdictions, it is to be noted that their statutes are different from ours, and in most jurisdictions only the Governor has the authority to remit a fine by constitutional provision.

In *People ex rel. Cropsey* v. *Court of Special Sessions* (170 App. Div. 575, 577; affd., 217 N. Y. 674) the court holds that the power of remission, which is discretionary under section 484 of the Code of Criminal Procedure, is not exclusive, but is a " concurrent " authority. It is my considered judgment that an order remitting these fines may be made, as well by the Court of Special Sessions of the City of New York as by this court, the former acting under the statutory power vested in it by the Inferior Criminal Courts Act. Where both tribunals have this concurrent jurisdiction it should never be used by one court in review of another until the first, the court of original jurisdiction, has had an opportunity to reconsider its own judgment. The scope and purpose of the Code provisions are not to be regarded as an appeal. The setting aside or modification of a judicial act of one judicial officer by another of co-ordinate jurisdiction in criminal cases is repugnant to the orderly process and administration of the law. (*Matter of Dodge* v. *Supreme Court*, 249 App. Div. 103, 107.) While we have the authority in this court to remit fines according to con-

structions of the statute in question, the practice ought not to be encouraged in this court, to entertain motions of this sort, when we know that the parties can go before the trial court and apply for the same relief. Consideration of such motions here have many disadvantages; whereas, in the court of original jurisdiction, the full record is always available, while here we are merely called upon to review the judgment of another upon affidavits. I am not disposed here to treat myself as though I were an executive officer charged with the execution of the law under supervisory and revisory authority as head of a department reviewing the acts of a subordinate. The duty to intervene must be exercised only after a clear case of abuse of discretion; and the judgment pronounced must stand unless it is either illegal or unjust or plainly excessive.

In the case of *People* v. *Kelly* (32 Misc. 319, 320) Judge FOSTER of this court said: "While this court has the undoubted power to remit such fine (Code Crim. Proc. § 484), it ought not to exercise it unless some good reason for so doing is shown, otherwise, this court would be sitting in review of the judgment of the Court of Special Sessions. That court is given ample power to grant the relief prayed for, by the act creating it (Laws of 1895, chap. 601), and it seems to me that no reason is given, or appears, why the application is not so made." (See, also, *People* v. *Philips*, 18 N. Y. Supp. [2d] 426.)

Motion denied, with leave to renew to the Court of Special Sessions.