PEOPLE v. FINUCAN.

(Supreme Court, Appellate Division, Second Department.   March 13, 1903.)

1. PRIZE FIGHTING—WHAT CONSTITUTES.
    A physical contest, without weapons, lasting 10 or 15 minutes, with in-
    tervals of rest, in which one contestant is knocked down once or twice,
    and finally knocked out, the spectators present being charged an admission
    to compensate the contestants, is a prize fight, within Pen. Code, § 458,
    punishing the instigating, aiding, and furthering a fight without weapons,
    commonly called a ring or prize fight, though no ring was marked off
    by ropes, and it does not appear what rules were in vogue.

2. SAME—CORROBORATION OF ACCOMPLICES.
    Evidence in a prosecution for aiding and furthering a prize fight ex-
    amined, and *held* to tend to corroborate an accomplice testifying to de-
    fendant's connection with the crime, as required by Code Cr. Proc. §
    399.

Appeal from Trial Term, Nassau County.

Thomas Finucan was convicted of aiding and abetting a prize fight,
and appeals.   Affirmed.

80 N.Y.S.—59

Argued before BARTLETT, JENKS, WOODWARD, HIRSCH-BERG, and HOOKER, JJ.

Henry A. Monfort (Ralph Stout, on the brief), for appellant.
James P. Niemann, for the People.

WOODWARD, J.   The defendant was charged by indictment with the "crime of willfully and unlawfully instigating, aiding, encouraging, and furthering a contention or fight between two persons, commonly called a ring or prize fight, in violation of section 458 of the Penal Code of the state of New York," and it was further charged that the said crime was committed by the defendant as the owner, agent, lessee, tenant, and occupant of certain premises known as the "Washington Hotel," in the town of Hempstead, Nassau county, who is alleged to have rented a barn located upon the said hotel premises for the purpose of a prize fight on the 18th day of February, 1902, and that he then and there permitted divers persons, unlawfully assembled, to enter said premises, and witness said contention or prize fight, and did then and there instigate, aid, encourage, and further said fight between one Jack Collier and one Sam Chissel.   Upon the trial the evidence tended to show that the defendant was the owner of the barn in question; that he had rented the same to the said Collier, through a friend, for the purpose of having a "smoker," with the privilege of a boxing match; and that upon the night in question 100 or more people assembled at the hotel, where tickets reading as follows were distributed among them:   "Smoker.   Jack Collier, Sam Chissel.   One Dollar." These tickets were subsequently accepted for admission to the barn, where Collier and Chissel, dressed in regulation prize ring costumes, engaged in a contest, in which the latter was struck several times, and was finally knocked down, where he lay until some one counted 10 or more, when Collier was declared the winner, and the party repaired to the barroom of the defendant, where a melee ensued, in which the defendant lost a diamond pin and a sum of money.   The defendant was found guilty of the crime charged, and appeals to this court.

It is urged that, as the indictment does not follow the exact language of the statute, the conviction of the defendant cannot be sustained, unless it was proved upon the trial that he was guilty of aiding and abetting a "ring or prize fight."   We are of opinion, however, that the evidence was such that the jury might properly arrive at the conclusion that the contest which is admitted to have taken place in the defendant's barn was a ring or prize fight.   It was a physical contest, without weapons, between two individuals, for the purpose of entertainment.   Those who were present each contributed $1 for the purpose, we may assume, of compensating the contestants; and, as it is conceded that one of the men in the arena was knocked down once or twice, and that the contest lasted for 10 or 15 minutes, with intervals of rest, it is hardly to be doubted that it was such a meeting as the law was intended to prevent.   The mere fact that the fighting space was not marked off by ropes into a "ring" of 16 or 24 feet, or that the evidence does not show what rules were in vogue, is of little practical importance.   The contest, by whatever name it may be called, was evidently what 99 people of every 100 in the ordinary walks of life would

call a ring or prize fight, and it was this kind of contests which the Legislature sought to prohibit by the provision of the Penal Code now under consideration. The jury having found that the defendant was guilty of aiding and abetting this contest, it should be sustained, unless there was manifest error in the trial.

It is urged that, as the evidence to connect the defendant with the letting of the premises was furnished by one of the contestants, an accomplice in the crime, the conviction cannot be sustained, unless such evidence is corroborated, as provided by section 399 of the Code of Criminal Procedure. It is also suggested that the evidence of the accomplice simply shows that it was represented to the defendant that the barn was wanted for the purpose of holding a "smoker," with "the privilege of having a boxing contest." But the evidence, while declaring that the language used was that quoted above, goes further, and shows that the accomplice asked the defendant if it was all safe, and that the latter said it was all right, indicating that the parties, while talking of a boxing match, had in mind that they were not acting within the spirit of the law. Assuming that one of the contestants who made the bargain for the barn was an accomplice, we think there is no difficulty in pointing out evidence which would tend to connect the defendant with the commission of the crime, as required by section 399 of the Code of Criminal Procedure, entirely independent of that furnished by the accomplice. The very circumstance that the defendant, knowing that the place was rented for the use of a crowd of men, made no effort to find out what use was to be made of the premises, but avoided going into the building during the day, is enough to justify a suspicion, at least, that he did not want to know what was in fact to be done. When it is remembered that the evidence showed that the greater part of the crowd were present in his barroom before the contest, that the tickets were on sale there, or were handed around in his presence, the evidence points unmistakably to the conclusion that the defendant either knew of the real purpose, or took such pains not to know as amounts to the same thing. The defendant could not close his eyes to matters which were passing about him, and allow his premises to be used in violation of law, and escape responsibility. Under the rule established in People v. Everhardt, 104 N. Y. 591, 11 N. E. 62, we think the evidence did tend to corroborate that of the accomplice, and the question of the sufficiency of such corroboration was for the jury to determine.

The judgment appealed from should be affirmed. All concur.