## PEOPLE v. McCUE.

(Supreme Court, Appellate Division, Second Department. October 9, 1903.)

1. GAMING—POOL SELLING—EVIDENCE.

  Where, in a prosecution for pool selling, defendant admitted that the room in which the transactions occurred was a poolroom; that the persons depositing money there were betting on horse races; and defendant was located behind a pigeon hole in a partition, received money from betters, and issued to them tickets containing a printed number, which represented horses designated on score cards posted in the room and circulated by messengers; and the several races were announced from behind the partition in their purported progress, after which the money won was paid to the successful ticket holders—the evidence was sufficient to sustain a conviction, without proof that the entire contributions of the various betters were divided among the winners.

2. SAME.

  In a prosecution for pool selling, evidence of remarks made by some of the betters in the room as to the probabilities or chances of winning of some of the horses named on the cards posted and circulated within the room, which were within defendant's hearing, was admissible.

**3. SAME—INSTRUCTIONS.**
> In a prosecution for pool selling, a refusal to charge that, while statements of people in the room, made in defendant's hearing, were admitted for the purpose of showing the character of the business done in the room, they were not to be taken as proof that a horse race was taking place, or had taken place as alleged, was without prejudice where the court had previously charged that it was incumbent on the prosecution to prove beyond a reasonable doubt that such races did actually take place, and defendant's representation to that effect, made on score cards circulated and posted in the room, were introduced to prove such fact.

Appeal from Trial Term, Westchester County.

Jeremiah A. McCue was convicted of pool selling, and he appeals Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS. HIRSCHBERG, and HOOKER, JJ.

John F. Brennan, for appellant.
J. Addison Young, Dist. Atty., for the People.

HIRSCHBERG, J.   The indictment charged the defendant with selling pools upon horse races on the 21st day of December, 1901, in violation of section 351 of the Penal Code.   The crime was alleged to have been committed at Yonkers, N. Y., and the races to have been run at New Orleans, La., and at Oakland, Cal.   The offense was charged substantially in the form which was under consideration by this court in People v. Corbalis (Sup.) 83 N. Y. Supp. 782, and which was held therein to be sufficient.

The learned counsel for the appellant contends that there was no proof of pool selling, because there was no proof that the entire contributions of the various betters were divided among the winners. I think there was ample proof of pool selling within the broad and general sense in which the word must be deemed to have been used by the Legislature, and in which it has come to be recognized and understood in common speech.   The defendant admitted on the witness stand that his idea was that the room in which the transactions occurred was a "poolroom," which he defined to be a place where people "take a chance; where they go to invest their money upon anything at all; a game of chance.   By the statement 'to invest their money' I mean to take a chance.   In common parlance, I mean 'to bet.'   I had an idea they were betting on horse races there."   His idea is not essentially different from that expressed by the court in Reilly v. Gray, 77 Hun, 402, 408, 28 N. Y. Supp. 811, 815:

> "Pool selling  *  *  *  is simply a scheme for facilitating betting on horse races.   The manager is the stakeholder.   The better deposits his money and selects his horse.   In one kind of pool the highest better has the first choice of horses.   The event of the race determines the winner, and he gets the whole, less the commissions of the manager.   There exist all the characteristics of betting.   The fact that several may combine upon the same horse does not change the character of the transaction.   The pool manager has nothing to do with the race, or with the moneys, except to safely hold them until the race is decided, and then hand them over to the winner or winners, less his commissions.   The essence of the whole thing is the betting, and that should determine the category to which such transactions belong."

The room where the operations in question were carried on was a large room, partitioned off at one end, with three circular or oblong pigeonholes in the partition. In front of the partition a hundred or more men and boys were assembled, to whom had been furnished a quantity of printed placards or score cards containing the names of the horses and races for that day at New Orleans and at Oakland, and which were used by them in the making of bets for the different events. A number of similar cards were hanging upon the walls of the room. Men were stationed at the pigeonholes behind the partition to receive the money from the betters and to issue to the latter tickets containing a printed number. The money was expressly tendered as a bet that a certain one of the horses designated on the score cards would win the race in which he purported to be entered, and the ticket was issued as a voucher of the bet. The defendant was behind the partition at one of the pigeonholes, and received money and issued tickets. The several races were announced in their purported progress by some one behind the partition, as, "They are off, at the quarter, three-quarter, and home," and the respective winners were then announced, and on presentation of the tickets at the pigeonholes the money won was paid to the successful ticket holders. This evidence, and other evidence unnecessary to detail, was sufficient to justify the jury in concluding that the defendant was engaged with others in selling tickets for combination betting in some of the forms, if there be more than one, in which pool selling is or may be carried on, and was sufficient to support the defendant's conviction, without precise proof that all the winnings were disbursed equitably or otherwise.

The learned trial court received evidence of remarks made by some of the betters in the room, actual or prospective, of the probabilities or chances for winning of some of the horses named upon the cards, and refused to charge the jury, at the defendant's request, that, "whilst the statements of the people in the outer room were admitted by the court for the purpose of showing the character of the business done in that room, they are not to be taken as proof that a race was taking place or had taken place in Oakland." The court had previously charged the jury, at the defendant's request, that it was incumbent upon the prosecution to prove beyond a reasonable doubt that horse races were actually taking place on December 21, 1901, at New Orleans and in California, and the defendant's representation to that effect made upon the score cards must be regarded, under the circumstances, and for the purpose of this case, as sufficient proof of the fact of the races, assuming that it was necessary to prove the fact as an essential ingredient of the crime. The reception of the evidence referred to and the refusal to charge infringed no substantial right of the defendant. People v. Kerns, 7 App. Div. 535, 40 N. Y. Supp. 243. The defendant, moreover, was in the room where the people were assembled a portion of the time, and admitted that he heard them talking about the cards, and that he "heard the people say about the cards hanging against the wall, well, so and so would be a good horse." He denied, it is true, that he knew what they meant, or in fact what was going on in the room or behind the partition; but, in view of the

facts that he knew the place was a poolroom, that he was engaged to some extent and in some capacity in its active management, that he was accordingly chargeable in law with the furnishing of the score cards and with knowledge of the purpose for which it was intended they should be used, and that he sold tickets and received the money, he cannot escape responsibility, even if he made no effort to find out the purpose of the gathering and of the acts in connection with it in which he actively participated. People v. Finucan, 80 App. Div. 407, 80 N. Y. Supp. 929.

The judgment of conviction should be affirmed. All concur.