The People of the State of New York, Respondent,
v. James Wright, Appellant.

(County Court, Albany County, May, 1917.)

Penal Law, § 986 — violation of — sufficiency of evidence considered
— appeal.

The evidence on a prosecution for a violation of section 986
of the Penal Law, which declares that "Any person who engages
in pool-selling * * * is guilty of a misdemeanor," con-
sidered, and *held* that the judgment of conviction should be
affirmed.

Appeal from a judgment of the Police Court of the
city of Albany convicting defendant of a violation of
section 986 of the Penal Law.

Edward J. O'Connell, for appellant.

Harold D. Alexander, District Attorney, for
respondent.

Addington, J. This is an appeal from a judgment
of the Police Court of the city of Albany, N. Y., con-
victing the defendant of a violation of section 986
of the Penal Law.

The defendant was sentenced to the Albany county
jail for three months.

A warrant was issued upon the complaint of one
Joseph Yott, residing at 41 Union street, in the city
of North Adams, Mass. It is alleged in the informa-
tion made by said Yott, that the defendant, James
Wright, " at the City of Albany, N. Y., in the county
of Albany aforesaid, on or about the 5th day of Sep-
tember, 1916, did feloniously, wrongfully, unjustly,
unlawfully, wickedly, wilfully, maliciously and know-

ingly violate subdivision — of section 986 of the Penal Law of the State of New York, in that he did engage in book-making at the city of Albany, N. Y., in that he did record and register wagers on the result of base ball games held throughout the United States, and received from persons money wagered on such result. That from the record so made he did each week choose and select and cause to be chosen and selected the persons entitled to receive the money wagered by the various persons making wagers with him under the name of Business Men's Club. That deponent's source of information is based upon statements made to deponent by said defendant on or about the above day mentioned, as follows: that he was interested in the management of said book-making and that he had selected the winner for the week starting August 28th, 1916, and that they knew the person who had won the wager."

The said section 986 of the Penal Law, so far as this case is concerned, reads as follows: "Any person who engages in pool-selling * * * is guilty of a misdemeanor," etc.

The evidence on the part of the people was given by two witnesses, Frank A. Seasons, a cigar manufacturer, of North Adams, Mass., and Joseph Yott, a cook, of North Adams, Mass. The defendant did not testify, nor did he present any evidence in his own behalf.

The information states acts alleged to have been done by the defendant which if true are sufficient to convict.

The particular violation in this case is the conducting of a base ball pool, that is, the wagering of bets on the result of contests between base ball teams throughout the country. This scheme of gambling and chance is not very clearly explained by the evi-

dence in this case. While the details of this species of gambling are not generaly known, it is a matter of common knowledge that such gambling is carried on throughout the country, and as appears by the evidence in this case large sums of money in the aggregate are wagered weekly on the skill of base ball teams.

The conviction in this case is based mainly on confessions made by the defendant, James Wright, to the two witnesses sworn in behalf of the people, and no evidence is offered by the defendant in contradiction of the statements alleged to have been made by these witnesses.

It appears that a ticket was purchased by the complaining witness, Yott, through the witness Seasons, and that Yott paid a dollar to one King and procured a ticket.

On the top of the ticket appear the words: "Business Men's Club, for week starting August 28th," then follow sixteen numbers, and opposite each number the name of a base ball team, and the words "Nat" and "Am." Opposite the names of the base ball teams are six columns of blank squares, and at the head of each column are the letters "M, T, W, T, F, and S," representing, as appears from the evidence, the days of the week; and a seventh column at the head of which are the letters "TO," meaning, apparently, total. It also appears that on this particular card, Mr. Yott selected "2, Pittsburgh," for Monday; "3, Boston, Nat.," for Tuesday; "4, Chicago, Am.," for Wednesday; "7, Detroit," for Thursday; "13, Philadelphia, Nat.," for Friday; and "16, Washington," for Saturday. In the square spaces opposite the teams in question in the order named above, are the figures in lead pencil, "7, 15, 7, 7, 9, 7."

The complaining witness, Yott, testified that he played the combination 2, 3, 4, 7, 13, 16.

It does not clearly appear how prizes are distributed, or how many prizes there are, but it does appear that at least the persons having a combination of teams which totals the highest number of runs during the week of any of the selected combinations receive a prize.

There is evidence that the combination of base ball teams for the week starting August twenty-eighth, selected by the complaining witness, had a total of fifty-two runs, which is the total of the lead pencil numbers in the squares above mentioned.

On the bottom of the ticket purchased by Yott are the words "High Combination," and under these words are the words "1st, 2nd, 3rd and 4th," and the word "runs," and various numbers following these words.

It does not appear from the evidence to what these words and figures under the words "High Combination" refer.

The ticket is printed, and is five inches long and two and a half inches in width.

Another paper was received in evidence, twenty-four inches long and seventeen inches wide, covered on each side by a mass of printed figures in small type, which, from the evidence, appears to be the combinations played in the base ball pool, and which total 6,506 combinations for the week starting August twenty-eighth, showing a collection for the week, on the basis of what Yott paid for his combination, of $6,506.

It does not appear from the evidence from how large a territory the players on this sheet of combinations come, whether it is mainly local or extends throughout a wide territory. The only direct evidence

as to the names of individuals playing this game is that of the complaining witness and Seasons, who reside in North Adams, Mass.

As has been said the proof of the conduct of this scheme of gambling is not very clear, and the only question for this court to determine is, whether there is sufficient evidence to sustain the conviction. If the evidence is sufficient, then this court would not be justified in holding a sentence to jail for three months as excessive, since the extreme penalty prescribed by law is one year, and the police magistrate had the defendant and witnesses before him and heard the evidence, and was better able to impose punishment than an appellate court.

It appears that Yott called on Seasons, and said that he had a ticket that called for fifty-two runs, and inquired if any money was coming to him, and that Seasons replied, " I haven't the ticket. I will have to wait until the ticket comes."

It appears that one Thomson, an employee of the Boston and Maine Railroad Company, brought the tickets to North Adams, and the same were turned over to the witness Seasons. Mr. Yott having procured his ticket from Seasons, the latter went to Albany with Yott to make inquiry as to his ticket which called for fifty-two runs. They called on defendant at a saloon No. 71 Beaver street, in the city of Albany, and had a conversation with defendant, and procured from him a duplicate tabulation of all the combinations played, which is the same paper referred to above containing all the combinations which were played, and it was found that the combination which Yott played, and which appeared on his ticket, was not printed in such a list of combinations.

Seasons testified that twenty-five other combina-

14

tions which were played and paid for did not appear on said printed list.

The defendant told these men that it was too bad that the numbers had not been turned in, and that the first money for that week would be $4,100.

It also appears that the defendant admitted the receipt of money for tickets sold, and showed a check for $450, which was received by him for tickets so sold. The defendant told the witness Seasons that the numbers were not there, and that he couldn't pay something on what he didn't have, and that he would be glad to pay the man if he had the numbers there, but as long as the play had not not been turned in he didn't see why he should expect it.

The Yott ticket was shown to defendant, and he said: " We will look it up, and if we find it, we will pay it." The defendant told these two men that if the ticket was in he would get about $2,300, and that he couldn't pay on that ticket, as it was not in; that he did not know Thomson, and he would see that he never handled tickets " in his pool."

Mr. Yott testified that defendant told him that he did not know Thomson, and that George Dillon had the sheets from Troy, and that he could not pay him as he did not know Thomson, and did not know whether he held out the money, and that he could not pay him (Yott) any money; that he had to pay it to the winner, the man whose combination was in, and that Yott's ticket was not in, so that he could not pay him, and that he (Yott) was unfortunate about it.

The charge in this case is that the defendant did feloniously and wrongfully, etc., violate section 986 of the Penal Law, in that he did engage in bookmaking in the city of Albany, etc. The information sets out the details of the alleged offense.

The defendant claims that there was not sufficient

evidence to convict him, and that there was no proof that he received any money from Yott; that the witnesses were accomplices, and were not corroborated, and that there is no other evidence in the case except confessions made by the defendant to these two witnesses, and that there is no evidence aside from such confessions that the crime alleged in the information was committed.

The defendant is charged with book-making in violation of the statute. He admitted to the two witnesses sworn by the people that it was his pool; that the numbers played by Yott were not on the printed combination sheet of numbers; that the Yott combination was not turned in; that if it were turned in Yott would be entitled to a certain sum of money; that he received money for the sale of combinations in the pools, exhibiting a check for $450; that he was sorry that Yott's combination was not turned in; and that he had to pay the winner as appeared from the combinations on the sheet, a duplicate of which he gave to these witnesses; that he would see that Thomson received no more tickets.

The defendant admitted in a conversation with these two witnesses the validity of the ticket purchased by Yott, and exhibited by him to the defendant.

The defendant invokes the aid of section 395 of the Code of Criminal Procedure, which reads as follows: "A confession of a defendant, whether in the course of judicial proceedings or to a private person, can be given in evidence against him, unless made under the influence of fear produced by threats, or unless made upon a stipulation of the district attorney, that he shall not be prosecuted therefor; but is not sufficient to warrant his conviction without additional proof that the crime charged has been committed."

There is, aside from these admissions by defendant.

" additional proof that the crime charged has been committed." Seasons testified that he procured the ticket for Yott, and that Thomson brought the tickets to North Adams.

The recognition of the Yott ticket by the defendant is a recognition of the agency of Seasons, and Thomson and King to whom the dollar was paid, with the defendant, and while Seasons, Thomson and King may be accomplices in this gambling scheme Yott is not an accomplice, and, therefore, the evidence of Yott corroborates that of Seasons; and there is clearly " additional proof " besides that of the defendant showing " that the crime charged has been committed." *People* v. *Bright,* 203 N. Y. 73.

In the case of *People* v. *Lambrix,* 204 N. Y. 261, 264, the court says: " To bring the case within the statute, it was not necessary that the defendant personally should make the record or registry of the wager. If it was made by any person in his employ or on his behalf or by his direction that would be sufficient to charge him."

In the case of *People* v. *McCue,* 87 App. Div. 72, 75, the court says: " The defendant, moreover, was in the room where the people were assembled a portion of the time, and admitted that he heard them talking about the cards and that he ' heard the people say about the cards hanging against the wall, well, so and so would be a good horse.' He denied, it is true, that he knew what they meant or in fact what was going on in the room or behind the partition, but in view of the facts that he knew the place was a pool room; that he was engaged to some extent and in some capacity in its active management; that he was accordingly chargeable in law with the furnishing of the score cards and with knowledge of the purpose for which it was intended they should be used, and that

he sold tickets and received the money he cannot escape responsibility, even if he made no effort to find out the purpose of the gathering and of the acts in connection with it in which he actively participated.''

It is clear to me that a huge and wide-spread gambling scheme was conducted by the defendant, which is abundantly proved by competent evidence. More than 6,000 combinations were played for the week starting August twenty-eighth, so that each player, if the gambling scheme were conducted fairly, had one chance of winning out of 6,000. But in the scheme as it was played for the week starting August twenty-eighth, as appears from the evidence of Seasons, at least twenty-five people, including this complaining witness, who wagered their money, had absolutely no chance of winning, because the same was not turned over to the defendant, but was retained by the person receiving it. It may be that out of this large number of players there are many others whose combinations were not returned to Wright, and hence they had absolutely no chance of winning the prizes. So that while this wide-spread and huge gambling scheme was carried on contrary to law, it led to other crimes, namely: the retention of the money played on this game of chance by the person receiving it, on account of which his combination does not appear on the list of combinations played as aforesaid.

It does not appear to what extent money paid by people on combinations played was retained, and the numbers not turned in to the proprietor of the gambling scheme, except as appears from the evidence of Seasons that twenty-five combinations did not appear on the combination sheet.

This fraudulent retention of moneys collected in this gambling scheme was detected because the result of the combination played by Yott was so high that

there were reasonable grounds to believe that he was successful, hence the inquiry and the discovery of the larceny by the retention of the money paid. If the total of the runs made in the combination of clubs played by him had been much smaller, he would not have made the inquiry which he did, and hence he and many others would still be ignorant of the fact that instead of having one chance out of six thousand to win they had absolutely no chance, on account of the fraud committed in the conduct of this gambling scheme.

For the reasons stated the judgment of the Police Court is affirmed.

Judgment affirmed.