THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EMMETT ROYALL, Appellant.

Court of Special Sessions, City of New York, Appellate Part, Second Department, August 19, 1935.

*John McSweeney* and *Matthew Wood,* for the appellant.

*William F. X. Geoghan, District Attorney [George F. Palmer, Jr.,* of counsel], for the respondent.

KERNOCHAN, P. J.    This is an appeal from a judgment convicting the appellant for vagrancy as defined by section 887, subdivision 4, clause (e), of the Code of Criminal Procedure.   Subdivision 4, clause (e), reads: " A person who receives or offers or agrees to receive any person into any place, structure, house, building or

conveyance for the purpose of prostitution, lewdness or assignation or knowingly permits any person to remain there for such purposes;" is a vagrant.

The prosecution's case is predicated upon the fact that the appellant was the proprietor of a hotel called the Bay View Hotel situated at 312 Fifty-first street in the county of Kings, borough of Brooklyn. Police Officer Abraham Cohen stationed himself in front of the hotel and had it under observation from ten-thirty to eleven-twenty-five P. M., on March 16, 1935. During that time four couples entered the hotel at various times, they would stop at the desk, where the appellant was standing, and after a conversation proceeded upstairs with the appellant. The officer also saw two couples leave the hotel. None of the couples had baggage.

At eleven-twenty-five P. M. the officer entered the hotel; behind the desk he found a man named William King who described himself as clerk; King later on the witness stand swore that he was a watchman.

After talking to King the officer seized the hotel register, then located the appellant on the second floor. The officer in company with the appellant visited thirteen rooms, taking the numbers from the register, and found couples in each room who said that they were not man and wife, this in the presence of the appellant who made no remarks concerning these disclosures. The officer testified that the men were partially dressed, the women nude. This evidence is admissible not of itself to establish appellant's knowledge of the disorderly character of the house but that in fact the rooms were being used for an immoral purpose.

The register itself is valueless as a record; although the pages are ruled to indicate the names of the guests, their address, the number of the room, the time of arrival and the time of departure, it appears that more than half of the registrants did not fill in their address, and at no time is the date of departure recorded. The appellant said that he entered the time of arrival but was too tired to register the time of departure. On March sixteenth from one-thirty A. M. until the time of the arrival of the officer there were forty-one rooms rented, thirty-one to couples, who registered as man and wife. Nine couples arrived between one-thirty and seven-ten A. M., five couples between ten-fifteen A. M. and four forty-five P. M. and seventeen couples between eight-fifteen P. M. and eleven-twenty P. M. It is significant to note that on March sixteenth the register shows that room No. 12 was occupied by Mr. and Mrs. Curray at eleven P. M. This room had been occupied by two other couples on that date. According to the register this same room had been occupied by Mr. and Mrs. J. DiPalma at ten-

fifteen A. M. and Mr. and Mrs. D. William at eight-thirty-three P. M. The register gives no intimation of the time this room was vacated by one couple to make room for another. Room 4 was occupied by Ed Walsh and wife at two-forty A. M. March sixteenth, J. Olsen and wife at four-forty-five P. M. and Mr. and Mrs. Leonard at nine-forty-five P. M. Room 22 on this date accommodated Mr. and Mrs. Pirano at five-twenty A. M. and Mr. and Mrs. Meura at ten P. M.

Guilty knowledge may be inferred from the surrounding facts and circumstances and the personal conduct of the appellant. (WADHAMS, J., in *People* v. *Rankin*, 92 Misc. 62.) The term "personal conduct," however, does not necessarily mean actual participation, but includes toleration, license and permission, and the knowledge which must be established may be shown inferentially. The inquiry must be not only whether the defendant had actual knowledge but whether under the conditions as they existed it does not follow that he intentionally refused to observe, that he was purposely blind and that he intentionally failed to take steps appropriate to correct the existing conditions, so that as a conclusion of fact it must be inferred that the defendant did have a guilty knowledge.

I feel from a reading of the testimony that the appellant must have had knowledge of the character and purpose of his customers, as he calls them. It must be noticed that the hotel is located in a residential district, and the register shows it is not a commercial hotel. The amount of business, all transient business, could only be accounted for by the inference that the hotel was used almost exclusively by men and women who repaired there only for the purpose of sexual intercourse. To place an innocent construction on the facts and circumstances in this case would be a strain upon the credulity of any magistrate, for it must be borne in mind that the appellant was present and in active management of the hotel and must have known for what purpose it was being used.

Judgment affirmed.

McINERNEY, J., concurs; SALOMON, J., concurs with memorandum.

SALOMON, J. (concurring). In my opinion the evidence in this case fully warranted the magistrate in finding the defendant guilty of violating subdivision 4, clause (e), of section 877 of the Code of Criminal Procedure, in that he knowingly received persons into his building for the purpose of prostitution and permitted them to remain there for that purpose.

Judgment of conviction should be affirmed.