THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SOL SHAPIRO, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* IRVING HERMAN, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALVIN L. DRUSS, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JULIUS W. MILLER, Appellant.

Second Department, July 21, 1958.

272

*Martin J. Scheiman* for appellants.

*Frank D. O'Connor, District Attorney* (*Howard D. Stave* of counsel), for respondent.

NOLAN, P. J. Appellants have been convicted of violating section 1141 of the Penal Law which, insofar as it is pertinent, provides that "A person who sells, * * * distributes, * * * or has in his possession with intent to sell * * * distribute * * * any obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic or disgusting * * * magazine * * * [i]s guilty of a misdemeanor ".

We may quickly dispose of the contention that the magazine which was distributed is not of the type described in that section. It is sufficient to say that it is fully and completely of the character which the language of the statute condemns. Neither do we find any merit in appellants' assertion that it was error to exclude testimony sought to be elicited from a witness, undoubtedly well qualified as a psychologist, as to his professional opinion with respect to the acceptability of the magazine, in the light of present day criteria of indecency and obscenity. It may be conceded that whether a particular publication is indecent or obscene is a "question of the times which must be determined as matter of fact" (*People* v. *Winters,* 294 N. Y. 545, 551). That question, however, must be determined by those charged with the duty to pass judgment, and we cannot say that the Justices who composed the trial court were not competent to determine of their own knowledge what the moral standards of the community were or that they needed enlightenment from the proffered testimony to aid them in determining whether the magazine was of the type which the statute, in precise terms, seeks to suppress. We have no doubt that situations might arise under the statute in which expert testimony would be useful, and even necessary. The magazine in question, however, is so obviously what the statute condemns — an indecent, obscene and disgusting publication — that there was no issue which required or justified either the statement of facts or of conclusions by witnesses possessed of special skill or learning (cf. *Dougherty* v. *Milliken,* 163 N. Y. 527, 533; *People* v. *Berg,* 241 App. Div. 543, 544).

Appellants also argue that the information does not state an offense in that it fails to allege that they acted knowingly, and that in any event there was no proof that they had any knowledge of the contents of the magazine. Neither argument may be sustained. If it be assumed that *scienter* is a necessary element of the crime charged, the information and the proof were nevertheless sufficient. It is alleged in the information that the appellants acted "wilfully". That allegation sufficiently charges that they acted knowingly and intentionally (*People* v. *Marrin,* 205 N. Y. 275, 279, 280; *People* v. *Harrison,* 238 N. Y. 348, 351, 352), and there is ample proof in the record that they did so. Guilty knowledge, like any other fact, may be shown by proof of circumstances from which knowledge may be inferred (*People* v. *Wallach,* 60 Hun 584, opinion in 15 N. Y. S. 226; *People* v. *Rankin,* 92 Misc. 62; *People* v. *Royall,* 156 Misc. 468).

It appears from appellants' testimony that all of them have had considerable experience in the business of distributing magazines, and we may assume that they had some familiarity with the various types of magazines distributed in the trade and sold on public newsstands and were aware of the law prohibiting the distribution and sale of indecent and obscene publications. The magazine which appellants have been convicted of selling was received, with others, in cartons 9 or 10 days before distribution, and it was necessary to break up the cartons in which they were received, and to rewrap the magazine in packages of 10 to 15, for delivery to the newsstands. A casual inspection of the cover of the magazine was sufficient, if appellants had any interest in the matter, to put them on notice of the probable type of the contents. Under such circumstances, appellants may not evade responsibility by closing their eyes to what should have been apparent. The record amply justifies the conclusion that they either knew that the magazine was of the type which they were prohibited from distributing, or took such pains not to know as amounts to the same thing (cf. *People* v. *Finucan,* 80 App. Div. 407, 410; *People* v. *McCue,* 87 App. Div. 72, affd. 178 N. Y. 579).

However this may be, it is our opinion that no proof of guilty knowledge was necessary to establish appellants' guilt of the crime charged against them. Section 1141 of the Penal Law prohibits not only the sale and distribution of indecent publications but also prohibits possession, with intent to sell or distribute. We need not decide what proof would be necessary to convict a defendant accused of possession with intent to sell or distribute in a case in which there had been no attempt to dispose of the prohibited publications. These appellants had made their choice to sell, and had sold the magazine in question, and the statute, insofar as it deals with sale and distribution, makes no mention of intent nor does it require proof of guilty knowledge of the contents of the publication sold or distributed.

Appellants argue, nevertheless, that it must be construed as prohibiting acts only when committed with guilty knowledge, and that, otherwise construed, it would deny due process of law, as guaranteed by the Constitutions of the United States and of the State of New York. In our opinion no substantial constitutional question is presented. Although it was the general rule at common law that *scienter* was a necessary element in the indictment and proof of every crime, and this was followed in regard to statutory crimes even where the statutory definition

did not in terms include it (*United States* v. *Balint,* 258 U. S. 250, 252), we entertain no doubt that the Legislature has power to dispense with the element of *scienter* in defining a crime, if it is considered necessary to do so in the public interest. The preservation of public morality had always been considered a proper subject for the exercise of the police power (*Matter of Kingsley Int. Pictures Corp.* v. *Regents of Univ. of State of New York,* 4 N Y 2d 349, 359) and in the exercise of that power there are many things prohibited by law, the criminality of which consists solely in the fact that they are prohibited. In such a case, mistake of fact or ignorance constitutes no defense. (Cf. *People* v. *Kibler,* 106 N. Y. 321; *People* v. *Werner,* 174 N. Y. 132; *People* v. *Bowen,* 182 N. Y. 1; *People* v. *Persce,* 204 N. Y. 397.) The accused, if he does not will the violation, is usually in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities (*Morissette* v. *United States,* 342 U. S. 246, 256), and there is no absence of due process because of the punishment of a person for an act in violation of law although he may be ignorant of the facts which made it so (*United States* v. *Balint,* 258 U. S. 250, 252, 253, 254, *supra*; *Shevlin-Carpenter Co.* v. *Minnesota,* 218 U. S. 57, 58, 67, 68). The question presented is one of legislative intent, to be determined on consideration of the statutory definition of the crime (Penal Law, §§ 20, 22; *People* v. *Ingber,* 248 N. Y. 302, 307; *People* v. *Brengard,* 265 N. Y. 100) and the law which preceded it, and which it replaced (*People* v. *Fanshawe,* 137 N. Y. 68, 74). It is our opinion that the language employed in, and the history of, the statute invoked and the statutes from which it is derived clearly indicate the legislative intent to dispense with *scienter* as an element of the crime defined, and to impose the risk of violation on those who fail to inspect that which they sell or distribute to others for public sale.

The statute with which we are here concerned is derived from section 317 of the Penal Code. The latter statute, however, was not the first proposed to, or enacted by, the Legislature, dealing with the subject under consideration.

By chapter 266 of the Laws of 1857, three commissioners (David Dudley Field, William Curtis Noyes and Alexander W. Bradford) were appointed to codify the laws of the State and were directed to prepare, among other things, a Penal Code which was to define all the crimes for which persons could be punished. A draft of the proposed Penal Code was submitted

by the commissioners in April, 1864. In their "Preliminary Note" thereto, the commissioners stated that one of their "leading objects" had been "To bring within the compass of a single volume the whole body of the law of crimes and punishments in force within this state." It was their opinion that "The existing statute law of crimes, though comprehensive, does not abrogate rules of the common law making criminal many acts which are untouched by statute; nor does it, in respect to crimes for which punishment is expressly prescribed, altogether dispense with the necessity of reference to the common law to determine what are the elements which constitute the offense. As long as the criminality of acts is left to depend upon the uncertain definitions or conflicting authorities of the common law, uncertainty must pervade our criminal jurisprudence."

To carry out that intention, as well as the apparent intention of the Legislature in appointing the commissioners, all common-law offenses were abolished by section 2 of the proposed code, which was substantially similar to section 22 of the present Penal Law.

With reference to the question here under consideration, section 363 of the draft provided:

"Every person who, *willfully and lewdly*, either:

"1. Exposes his person, or the private parts thereof, in any public place, or in any place where there are present other persons to be offended or annoyed thereby; or,

"2. Procures, counsels or assists any person so to expose himself, or to take part in any model artist exhibition, or to make any other exhibition of himself to public view, or to the view of any number of persons, such as is offensive to decency, or is adapted to excite to vicious or lewd thoughts or acts; or

"3. Writes or composes, stereotypes, prints, publishes, sells, distributes, or keeps for sale, or exhibits any obscene or indecent writing, paper or book, or designs or copies, draws or engraves, paints, or otherwise prepares any obscene or indecent picture or print of any description, or moulds, cuts, casts, or otherwise makes any obscene or indecent figure, or form,

"Is guilty of a misdemeanor." (Emphasis supplied.)

In December, 1864 the commissioners reported the complete proposed Penal Code, which apparently was submitted to the 1865 Legislature. Section 363 retained the words "willfully and lewdly" in its introductory portion. Section 2 of the 1864 draft, abolishing common-law crimes, was retained, with minor changes in language. The proposed code was not adopted, however, and a new revision of the statutes of the State was

undertaken by different commissioners (Montgomery H. Throop, Sullivan Caverno and James Emott), apparently pursuant to chapter 33 of the Laws of 1870.

Prior to the appointment of the new commissioners, there had been enacted, by chapter 430 of the Laws of 1868, an " Act for the suppression of the trade in and circulation of obscene literature. Insofar as is here material it provided:

" If any person shall sell, or offer to sell, or shall give away, or offer to give away, any, or have in his or her possession with intent to sell or give away, any obscene and indecent book, pamphlet, paper, * * * every such person shall, on conviction thereof, be imprisoned in the county jail not more than one year, or be fined not more than one thousand dollars for each offense ". It is to be noted that that statute did not include the words " willfully " or " lewdly ", contained in the commissioners' drafts of 1864 and 1865.

Thereafter, in a report dated April 30, 1878, the commissioners appointed pursuant to chapter 33 of the Laws of 1870 submitted a new proposed statute relating to the criminal law. In their report, the commissioners stated that they had made use of the Penal Code reported to the Legislature in 1865 by the commissioners appointed under chapter 266 of the Laws of 1857 but " have not * * * adopted it, or followed it exclusively. * * * The framers of the ' Penal Code ' intended to produce a complete code of criminal law, which should abrogate and completely take the place of the rules of the common law respecting the subjects to which it relates. Our duty is rather to arrange in systematic form and order the existing statutory law upon those subjects, leaving the rules of the common law still applicable to cases where no statutory provision exists, and where no material change seemed to be required." As would be expected, the proposed law contained no provision abolishing common-law crimes, similar to section 2 of the 1864 and 1865 drafts.

Section 344 of the new proposed law was as follows: " A person who sells or offers to sell, give away or offers to give away, * * * or has in his possession, with intent to sell or give away, or to exhibit or show the same, an obscene or indecent writing, paper, * * * book * * * is guilty of a misdemeanor."

The draft indicated that the section was derived from chapter 747 of the Laws of 1872, as amended by chapter 777 of the Laws of 1873. Chapter 747 of the Laws of 1872 repealed chapter 430 of the Laws of 1868, above mentioned, and substituted therefor, *inter alia,* the following: " If any person shall sell,

or offer to sell, or shall give away, or offer to give away, or have in his or her possession, *with or without intent to sell or give away,* any obscene and indecent book, pamphlet, paper, \* \* \* every such person shall, on conviction thereof, be imprisoned in the county jail or State prison not more than six months, or be fined not less than one hundred nor more than one thousand dollars for each offense." (Emphasis supplied.)

That statute was amended the following year by chapter 777 of the Laws of 1873, which provided, insofar as is here material:

" If any person shall sell, or lend, or give away, or in any manner exhibit, or shall offer to sell, or to lend, or to give away, \* \* \* or shall have in his possession, for any such purpose or purposes, any obscene book, pamphlet, paper, writing, advertisement, circular, \* \* \* every such person if *of twenty-one years of age or over,* shall, on conviction thereof, be imprisoned at hard labor for not less than three months or more than two years, and be fined not less than one hundred dollars or more than five thousand dollars for each offense; but if under twenty-one years of age, shall be imprisoned not more than three months and be fined not more than five hundred dollars, in the discretion of the court, for each offense ".

To return to the draft of 1878, it appears that it was reviewed by a special committee of the Senate (Samuel S. Edick, Edwin Hicks, Charles Hughes). In their report, dated February, 1879, accompanying an amended bill, they said, with respect to the 1878 draft:

" It does not, however, purport to be a complete code of criminal law, nor is it intended to abrogate the common law relating to crimes. \* \* \* it was originally framed as a part of the New Revision of the Statutes. It has, therefore, a different scope from the proposed Penal Code reported in the year 1865 by the Commissioners appointed under Laws 1857, ch. 266.

\* \* \*

" This bill leaves the rules of the common law, respecting crimes, and the trial, conviction, and punishment of criminals, now in force, untouched where they are not specially and expressly abrogated.

" It also leaves in force all existing statutes, relating to offenses not embraced by its provisions, or which are not inconsistent therewith."

The revised bill, also, contained no provision abolishing common-law crimes.

The provision with respect to obscene writings, contained in the February, 1879 draft, was as follows: "Section 353. A person who sells, lends, gives away or offers to give away, * * * or has in his possession, with intent to sell or give away, or to exhibit or show * * * an obscene or indecent writing, paper * * * book * * * is guilty of a misdemeanor." The derivation of the provision is shown as the above-mentioned chapter 747 of the Laws of 1872 and chapter 777 of the Laws of 1873.

Finally, on May 14, 1879, another bill entitled "An Act to Establish a Penal Code" was presented. In a report submitted therewith it was stated: "The Code now presented embodies the reforms contemplated by the late revisers of the statutes, together with those portions of the law of crimes not included by them in their work. It thus embraces all the substantive criminal law of the State placed in the form of a Code."

Section 2 of the proposed code contained a provision abolishing common-law crimes, substantially the same as was originally recommended in the drafts of 1864 and 1865, above mentioned. Section 317 of the proposed code was as follows: "§ 317. A person who sells, lends, gives away or offers to give away, or shows, or has in his possession, with intent to sell or give away, or to show * * * an obscene or indecent book, writing, paper * * * is guilty of a misdemeanor." That section was contained in the first Penal Code adopted in this State (L. 1881, ch. 676).

Section 1141 of the present Penal Law is derived from that section, as amended by chapter 380 of the Laws of 1884, chapter 692 of the Laws of 1887 and chapter 731 of the Laws of 1900.

As last amended, and prior to the adoption of the Penal Law in 1909, section 317 provided: "A person who sells, lends, gives away or shows * * * or has in his possession with intent to sell, lend or give away, or to show * * * any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story paper, writing, paper * * * or any written or printed matter of an indecent character * * * is guilty of a misdemeanor".

In none of the statutes enacted, or drafts submitted, after 1865 was guilty knowledge made an element of the crime of selling or distributing indecent or obscene writings.

To return to the original draft of the proposed Penal Code by the commissioners appointed by chapter 266 of the Laws of 1857, it will be recalled that section 363 thereof prohibited not

only obscene literature but also exposure of the person. Insofar as the latter crime is concerned, the language of section 363, providing as an element of the offense that the exposure be done "willfully and lewdly" was retained in all the subsequent drafts which have come to our attention, as well as in the Penal Code (L. 1881, ch. 676) and the present Penal Law (L. 1909, ch. 88). It may be noted that section 343 of the draft of April, 1878 and section 352 of the draft of February, 1879 each indicated as its source the "proposed Penal Code, § 363".

The provisions of all the drafts subsequent to 1865, as well as section 316 of the Penal Code and section 1140 of the Penal Law, were identical and read as follows: "A person who *wilfully and lewdly* exposes his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another so to expose himself, is guilty of a misdemeanor." (Emphasis supplied.)

We believe that the omission of the words "willfully and lewdly" from the statutes of 1868, 1872, 1873, section 317 of the Penal Code and section 1141 of the Penal Law, was deliberate and purposeful. For reasons that appear obvious, in enacting section 316 of the Penal Code (now § 1140 of the Penal Law) exposure of the person was made a crime only if committed willfully and lewdly, as was provided with respect to that offense and the sale of obscene or indecent writings in the Penal Code proposed in 1865. That proposal was, apparently, not considered acceptable with respect to obscene writings. The legislative purpose in 1868, and in 1872 and 1873, is clearly indicated by the titles of the acts adopted. The sale and distribution of indecent writings were not to be excused by mistake or inadvertence. The traffic was to be *suppressed* and it would appear that the Legislature intended to take whatever steps were necessary to accomplish that purpose effectively.

In 1872 possession alone, without intent to sell or distribute, was made a crime and in that year and in 1873 severe penalties were imposed for violation of the law. We have no reason to doubt that the legislators thoroughly understood the significance of the omission of words indicating that *scienter* should be a necessary element of the offense defined (cf. *People* v. *Kibler*, 106 N. Y. 321, 323, 324, *supra*), or that they had in mind the difficulty of proof of knowledge (*People* v. *Kibler*, *supra*, p. 324) and weighed the possible injustice of subjecting an innocent seller to punishment against the danger inherent in the public distribution of pornography. (Cf. *United States* v.

*Balint,* 258 U. S. 250; *supra.*) That the act alone, irrespective of motive or intent, was to constitute the crime is further indicated by the continuation of the statutory definition in the Penal Code and the Penal Law, which had as their purpose the definitions of crimes in terms as nearly certain as possible and which, in the execution of that plan, and for purposes of clarity, abolished all common-law crimes (*People* v. *Brengard,* 265 N. Y. 100, 106–107, *supra*). The crime with which we are here concerned is clearly and precisely defined in section 1141 of the Penal Law. We may not alter that definition and we see no reason to read into it the rule of the common law which it dispensed with.

Other arguments presented by appellants have been considered, but we find nothing in them which requires reversal.

The judgment should be affirmed.

No separate appeal lies from the intermediate orders, which have been reviewed on the appeal from the judgment of conviction.

Present — NOLAN, P. J., WENZEL, BELDOCK, MURPHY and HALLINAN, JJ.

Judgment unanimously affirmed.

No separate appeal lies from the intermediate orders, which have been reviewed on the appeal from the judgment of conviction.